STATE OF NEBRASKA, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, PLAINTIFF, V. C. E. CHILDE, DEFENDANT.

23 N. W. 2d 720

FILED JULY 12, 1946. No. 30822.

*Walter R. Johnson, Attorney General, Don Kelley,* and *C. S. Beck,* for plaintiff.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an original proceeding brought by the state on the relation of the Attorney General, charging the defendant with contempt of court for practicing law without a license. The case was previously before this court on a motion of the state for a judgment on the pleadings. State ex rel. Johnson v. Childe, 139 Neb. 91, 295 N. W. 381. The motion was therein overruled and the cause referred to the Honorable E. A. Coufal, the duly appointed referee of this court, for the taking of evidence and the determination of findings of fact and conclusions of law. The referee thereupon proceeded to take evidence, make his findings of fact therefrom and determine the law applicable thereto. The matter is now before the court on the motion of the Attorney General for judgment on the report of the referee. No objections were filed to the referee's report.

The information charges the defendant with engaging in the practice of law on five separate occasions, each being charged in a separate count. In the discussion of these various counts and the evidence tending to sustain them, we shall allude to applicable rules of law only as they bear upon the issues immediately before us. The law generally applicable to the case is set forth at length in our former opinion.

Count one alleges that on or about January 12, 1939, a hearing was had before the Nebraska State Railway Com-

mission in a proceeding entitled "In the Matter of the Application of the Central States Motor Carriers' Association for Authority to Establish Commodity Rates on Building and Fencing Materials," which said hearing was adjourned from time to time and finally concluded on February 9, 1939. The information then alleges that the defendant, a person not licensed to practice law, appeared in said proceeding, to which he was not a party, as the representative of the petitioner, the Central States Motor Carriers' Association, Farmers Union of Nebraska, Nebraska Farm Bureau Federation and Farmers Grange of Nebraska, interested parties of record in said proceeding and, acting as an attorney at law in behalf of his clients, prepared and filed pleadings and other documents therein, examined and cross-examined witnesses in the conduct of said proceedings, objected to the introduction of testimony of witnesses adverse to the interests of his clients and made arguments before said commission in support of the petition and those for whom he appeared.

The evidence shows that the petition and petitions in intervention filed before the commission in behalf of the petitioner and interveners were prepared by the defendant and bore the endorsement "C. E. Childe, Counsel." Defendant admits that he prepared these pleadings without the assistance of legal counsel and without an attorney at law appearing with him in said proceeding. He examined all witnesses called by the applicant on direct, redirect and rebuttal examinations and cross-examined all witnesses called by adversary interests and discussed all legal questions raised at the hearing.

The legal questions involved included a knowledge of the statute—making provision for the filing of the petition and the petitions in intervention and a knowledge and understanding of the statute defining the jurisdiction of the railway commission in such cases, as well as the legal training and experience inherently involved in the drafting of such pleadings.

The theory of petitioner was that, as its members were particularly engaged in the transportation of livestock from farms and ranches to market and of return loads of commodities suitable for transportation in livestock trucks from the markets back to the farms and ranches, a reduction in rates on such commodities suitable as a "back haul" to farms, ranches and other agricultural areas in Nebraska would increase the revenue derived from such "back hauls" and at the same time permit farmers, ranchers and others to benefit from such reduced rates. It was also the theory of petitioner that as the commission had prescribed special rates on such commodities as mill feeds as "back hauls," it could with equal propriety reduce the rates on fencing and building materials in quantity lots. It was also alleged by the petitioner that the rate on fencing and building materials was much higher than those charged by railroads and the interstate rates charged by motor carriers. It was also the theory of the petitioner as expressed in its petition that the intrastate rates applicable to motor carriers were excessive, unjust and unreasonable, and resulted in the exaction of unreasonable charges and in undue prejudice to intrastate shipments, shippers, receivers,. and carriers by motor truck, and in undue preference to interstate motor truck carriers and shippers and of intrastate shipments by rail, in violation of the laws of the state. Fencing and building material rates are alleged to have been fixed by the commission at a much higher rate than similar commodities moving in volume, all in violation of the laws of the state. Petitioner then prays that the rate on fencing and building materials be reduced to meet the objections and eliminate the discriminations pointed out in the petition.

The referee aptly states the legal elements necessary to be contained in the petition in question in the following language: "(a) that there be pleaded and proved the legal interest of the petitioner which entitled him to request the relief prayed for, and the petitioners (or interveners) right to maintain the proceedings; (b) a determination of the

persons who, if the order prayed for was granted, would be adversely affected thereby in order that the Commission would acquire jurisdiction to enter the order prayed for on due notice; (c) the legal definitions of terms employed in the statute clothing the Commission with powers in the premises, such as 'non-discriminatory,' 'unjustly discriminatory,' 'unduly preferential,' 'Lawful rate' and 'lawful classification' and other terms fixing the legal statutory standards; all involved in the issues presented in the petition and petitions of intervention; (d) a determination whether there is such a legal classification of cargo carriage as a 'back haul' on particular commodities and whether it was within the power of the Commission to classify such haul as a separate and distinct classification of freight carriage, and whether a lower rate on such commodities hauled by particular carriers was discriminatory (as a matter of law) as against other classes of carriers; (e) whether it was within the power of the Commission to order such reduction when the haul was to be made 'at the convenience' of the preferred carrier; (f) to determine the legal sufficiency of facts to invoke the jurisdiction of the Commission to enter the order prayed for."

The record shows that the proceeding before the commission was conducted largely in the manner of a court trial in a court of general jurisdiction. Questions as to the admissibility of evidence, the qualifications of witnesses and the bearing of the evidence upon the issue presented played a prominent part in the hearing at various stages of the proceeding.

The defendant at various times during the course of the hearing was shown to have made use of legal procedures and principles in doing the following: (1) he made an application to consolidate this proceeding with other proceedings submitted to the commission; (2) he made proof of the legal form of the plaintiff organization, its membership and the nature of each as a carrier, its legal interest entitling it to invoke the jurisdiction of the commission, and

the action of the plaintiff organization authorizing the commencement of the proceeding; (3) in making an interpretation of proviso d, § 3, ch. 142, Laws 1937, (now subdivision 4 of section 75-224, R. S. 1943) to determine whether the exclusionary proviso applies to a haul of livestock from points outstate to Omaha by a farmer or rancher owning his own truck and hauling his own livestock, which was argued by defendant and ruled on at the hearing; (4) in determining whether notice had been given to truck carriers of merchandise sufficient to clothe the commission with jurisdiction to enter an order affecting their interest, a point discussed by defendant; (5) in establishing the power of the president of the petitioning organization to speak and bind the organization, a point upon which defendant adduced evidence; (6) in determining the question whether a rate reduction to carriers of livestock on the "back haul" would be discriminatory and prejudicial to commercial truck and rail carriers, a point also discussed by defendant; (7) during the hearing defendant preserved objections to rulings by the commission by noting exceptions thereto in contemplation of a review on appeal; he laid foundations for expert witnesses, he made stipulations regarding the admissibility of evidence and at the close of all the evidence he moved the commission for an order making the rates prayed for effective until a final order was entered on the merits; (8) in considering the question whether the reduction of rates to livestock truckers on building materials was discriminatory in that it would operate to the benefit of a special group of truckers on a particular commodity and whether such preferential rate involved a classification not authorized by section 15, ch. 142, Laws 1937 (now section 75-248, R. S. 1943).

We conclude that in the proceeding before the commission involved herein and the part taken by the defendant in his conduct thereof, there was involved a need of legal training, knowledge, and skill and constituted the practice of law. It was particularly required in the drafting of the petition,

in the interpretation of the legislative powers with which the commission was clothed, in determining the power of the commission to make the order, in the making of a record in contemplation of a judicial review, in establishing the legal qualifications of witnesses to testify and the technical proffer of testimony in conformity to legal standards. In performing such services, and others noted in this opinion, in a representative capacity without license to engage in the practice of law, the defendant engaged in the illegal practice of law within the meaning of the rules announced in the former opinion in this case. State ex rel. Johnson v. Childe, 139 Neb. 91, 295 N. W. 381.

The second count of the information alleges that on April 16, 1935, a hearing was had before the Nebraska State Railway Commission in a proceeding entitled "In The Matter of the Application of the South Omaha Terminal Railway Company for authority to increase rates and charges for switching, loading and unloading, etc., Freight at South Omaha." and that the defendant appeared before said commission in behalf of the Omaha Terminal Railway Company as an attorney at law, although unlicensed to do so. It is alleged that he handled and conducted said proceedings, counseled and advised with said railway company with reference to law and procedural matters, drew and prepared the application and other papers filed therein, examined and cross-examined witnesses and, at the close of the hearing, filed a brief for the guidance and assistance of the commission.

The evidence adduced in support of the allegations contained in the second count is of the same class and character as that shown in support of count one. It would serve no useful purpose to recite the evidence in detail here. We hold that the evidence sustains the charge that defendant performed services therein which required legal training, experience and skill and he, being unlicensed, is guilty of the illegal practice of law as charged in count two.

With reference to counts three, four and five of the information, we agree with the findings of the referee that the state failed to establish that defendant drew and prepared pleadings, conducted any proceeding or made any arguments, oral or written, which required legal training, experience or skill that constituted the illegal practice of law. On each of said counts the evidence is held insufficient to sustain the charge.

The power to define what constitutes the practice of law is lodged with this court. The sole power to punish any person assuming to practice law within this state without having been licensed to do so also rests with this court. It is the character of the act and not the place where the act is performed that constitutes the controlling factor. An all inclusive definition of what constitutes the practice of law is too difficult for simple statement. We shall not attempt it here, but will follow the practice established by the previous decisions of this court and examine the facts and circumstances of each case and determine whether the defendant purported to exercise the legal training, experience and skill of an attorney at law without a license to do so. Our former decisions supporting these views are collected and discussed in State ex rel. Johnson v. Childe, *supra*.

The defendant frankly admitted that he performed all the acts which we have held constituted the illegal practice of law as charged in counts one and two. It is evident that he performed them under the assumption, erroneous as it was, that he had the right to do so. The imposition of severe punishment under such circumstances would serve no useful purpose. The judgment of the court is that the defendant be adjudged guilty of contempt on each of counts one and two and that he pay into the office of the Clerk of the Supreme Court a fine of $10 on each of said counts, and pay the costs of the action.

JUDGMENT FOR RELATOR.

YEAGER, J., dissenting.

I am unable to agree with the majority opinion in this case. I cannot agree either that under the circumstances of this case the defendant was practicing law or that if he was that this court in this proceeding has power to punish him as for contempt of court.

There is little, if any, dispute as to the facts. They are correctly and adequately reflected in the majority opinion. If he had been before a court I would, without hesitation, say he was practicing law without a license, but he was not before a court. As pointed out in State ex rel. Johnson v. Childe, 139 Neb. 91, 295 N. W. 381, the representation was in a legislative and not a judicial proceeding.

The defendant appeared in that legislative proceeding as a specialist. Rate making is a specialized matter and those persons dealing with the subject, if they are able to do so efficiently and intelligently, have special training and skill along those lines over and above that of all except a very few lawyers. And of course a person possessed of the adequate training along those lines must be familiar with certain statutes and rulings of courts and commissions akin to the subject. Without this he would be of no value. And above all he would be of no value were he not able to demonstrate his skill by exposition or inquiry.

I cannot bring myself to say that a person who initiates and conducts for a carrier a hearing or hearings before a legislative body the sole purpose of which is to make or adjust transportation rates is invading the field of the practice of law.

The fact that, for limited purposes, there may be a review of the action of the legislative body in the courts in nowise causes me to alter my attitude.

Even if I were to concede that the defendant was guilty of practicing law without a license on the facts still, as it appears to me, this proceeding is not one wherein he may be properly prosecuted or punished. This is a proceeding in contempt of court and not for the imposition of a penalty

under a statute. Of what court was he in contempt? He appeared before no court. He did not attempt to appear before any court. He in nowise attacked the integrity of any court. He was not a member of the bar of any court.

The majority opinion rests on the precedent of State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95, and State ex rel. Wright v. Hinckle, 137 Neb. 735, 291 N. W. 68, which I think is clearly wrong.

In the syllabus in State ex rel. Wright v. Barlow, *supra*, the rule which is followed in the majority opinion was stated as follows: "The supreme court possesses the inherent power to punish for contempt any person assuming to practice law within the state without having been duly licensed so to do."

With this statement I cannot agree. The Supreme Court is but a creature of the Constitution within the judicial department. Its jurisdiction is limited by that Constitution (Art. V, sec. 2) and neither within its limits nor within the limits of any legislative grant may there be found any semblance of power to police any class of people except they be members of the bar of the state or except they have some contact with the functioning of the court. To say that the power to police or discipline beyond the sphere of its own constitutional or statutory activity inheres in the Supreme Court is, in my opinion, an inexcusable, unwarranted, and unconstitutional arrogation.

Police power is an attribute of sovereignty usually implemented by the Legislature. There has been no implementation the effect of which is to grant the Supreme Court power to police persons who assume to practice law without admission to the bar.

I grant the right of this court to punish as for contempt those not admitted to the bar who attempt to practice law before the courts but beyond that I cannot go. Beyond that it is a matter of legislative and not of original judicial concern exactly as in the case of the practice of medicine, den-

tistry, or any other profession or occupation subject to regulation under sovereign police authority.

PAINE, J., dissenting.

Not being in accord with the conclusion of the opinion adopted by the majority of the court, to the effect that in this case the defendant should be fined on two counts and be required to pay all the costs, which will be considerable in amount, I file this dissent.

The facts, as disclosed by the pleadings and evidence, may be set out as follows: An information, affidavit, and motion for citation for contempt of court was filed as an original action in this court by the Attorney General on September 16, 1939. On November 8, 1939, an answer was filed by the defendant. E. A. Coufal filed oath as referee April 16, 1940, and on August 1, 1940, A. G. Ellick, as attorney for defendant, filed an amended answer, and on the same day the plaintiff filed motion for judgment on the pleadings.

Thereafter, on February 21, 1941, the opinion of this court was released, as found in 139 Neb. 91, 295 N. W. 381, in which the motion for judgment on the pleadings was overruled and the cause referred to the referee for taking of evidence, and findings of fact, and conclusions of law.

In accordance therewith, a hearing was had before the referee on July 28, 1941, and the evidence of the witnesses and the exhibits introduced, which constitutes the second volume of the bill of exceptions in this case.

At this hearing before the referee, the defendant testified at length. In the examination on the part of the plaintiff, he testified that, as a traffic counsel, he reads the reports of the Interstate Commerce Commission and is familiar with the opinions of this court when they are set out in the references in the State Railway Commission's reports. "A. I don't go to the court's decisions at all, so I don't pretend to have any knowledge of what the courts say, other than what I learned from experience in these Commission

cases. Q. You have a library in your office, do you? A. Yes. Q. What does that consist of? A. Oh, a lot of papers and reports. Q. Do you have the reports of the Interstate Commerce Commission? A. A good many of them. Q. And the Nebraska State Railway Commission? A. Most of them. Q. And the Statutes? A. I don't have any Statutes except pamphlet copies of the Railway Commission Act and Motor Carrier Act, etc., which the Commission distributes."

The defendant on cross-examination testified that he worked in Burlington depots, beginning at Palisade in 1900, then Akron, Colorado, Arapahoe, Nebraska, and in 1901 became clerk in the freight auditor's office at Omaha, checking waybills. In 1909 he became traffic manager for Sunderland Bros. Co. In July 1912, he became assistant traffic manager for the Omaha Chamber of Commerce, then was with the Sioux City Chamber of Commerce, and from 1918 to 1935 was traffic manager of the Omaha Chamber of Commerce, and in 1935 opened his own office as transportation counsel.

He testified that he has handled hundreds of cases before the Interstate Commerce Commission and dozens of cases before the Nebraska Railway Commission. "Q. Have you recently been appointed to any office that has to do with transportation matters? A. I was notified last week that I had been appointed by President Roosevelt as a member of the Board of Investigation and Research created by the Transportation Act of 1940."

On March 26, 1943, there was filed in this court the withdrawal of the firm of Ellick, Fitzgerald & Smith from further representing the defendant, setting out that the attorney, A. G. Ellick, who had appeared for defendant in hearings before the referee, had died on June 21, 1942.

Thereafter there was filed in this court on May 23, 1945, by plaintiff a motion for judgment on report of referee and on June 4, 1945, there was filed a notice of hearing and copy of an air-mail letter enclosing such notice, addressed to de-

fendant in care of Cosmos Club, Washington, D. C., with a registered mail return receipt attached.

To make my position clear, I agree with the majority opinion that the defendant is shown by the record in this case to have engaged in the practice of law without a license, according to the present holding of this court, but I am absolutely opposed to requiring him to pay hundreds of dollars of costs in a test case in which it was not the defendant's intention at any time to illegally engage in the practice of law, but simply to engage in the business of traffic counsel.

I find a recent case, brought by the Wyoming State Bar Association, which illustrates my ideas of how a case of first instance may be disposed of with fairness to all parties. In this case of State ex rel. Wyoming State Bar v. Hardy, 156 P. 2d (Wyo.) 309, I find that the evidence discloses that G. W. Hardy had been employed as accountant, bookkeeper, law clerk, and ranch manager by a firm of practicing attorneys in Sheridan, Wyoming; that D. C. Wenzell, one of the partners in this firm, died and Mr. Hardy looked after his widow's local business after she removed to New York City; that there was some correspondence in which she requested that a will be prepared and sent her for execution. Thereupon, said Hardy prepared this will from a form taken from the files of the law firm, his employer suggested the particular trust provision to be employed, and when completed the will was placed on his employer's desk for examination and approval. Defendant was advised it was all right, and it was sent on to Mrs. Wenzell on October 27, 1938, for execution, and she died on May 16, 1942, whereupon said Hardy filed the will, in which he was named as executor and trustee.

Hardy had on other occasions as a law clerk submitted facts to his employers, who would then indicate the proper form of will to use and he would then type such wills, and such activity on his part had continued for 20 years. De-

fendant denied that he held himself out as a lawyer, or intended to engage in the unauthorized practice of law.

After reviewing many authorities, the opinion, written by Justice Riner, closes with these words:

"It appears that the defendant has been engaged in the practices concerning which plaintiff complains for many years. This fact must have been known to members of the Bar residing in the vicinity, and, indeed, the record so indicates. Yet no suggestion of impropriety or warning appears to have been given the defendant and no steps were or have been taken to stop such practices until the present proceeding was instituted. The record clearly indicates also, as the Referee has inferentially found, that the defendant did not intend to engage in the unauthorized practice of law. Inasmuch as this is the first case of this character brought to our attention, under all the circumstances disclosed by the record before us, we prefer to refrain from being unduly severe with defendant notwithstanding he has mistakenly transgressed the boundaries that subsist between lay and professional action in the matter of drawing wills.

"All things considered, we do not believe that it will be necessary to enjoin defendant from continuing these practices. In the light of what we have hereinbefore said and the state of the law concerning this matter as we find it and as reviewed in this opinion, we feel that his own desire to abide by the law will control his conduct in the future. It is our view, also, that the entire costs of this proceeding should not be borne by him. The judgment will be that each party shall pay one-half of the accrued costs and that upon this being done the proceeding will be dismissed. An order to that effect will be entered.

"Dismissed as ordered."

After reading the evidence taken before the referee, it appears to me that for more than 20 years the defendant was widely recognized as one of the outstanding traffic authorities of the central west; that he never had the slightest intention of acting as a lawyer, and never held himself

out as engaging in the practice of law, but that at all times, as he thought he had a perfect right to do, he was engaged in his chosen profession of traffic counsel in Omaha, representing many corporations and organizations, until he was given a Presidential appointment to an office in his chosen field of work which took him to Washington several years ago.

Under these facts and our present holdings, it is my idea that, before punishing him for an unintentional contempt of this court, he should be given an opportunity to purge himself of such contempt. I am opposed, under these circumstances, to the imposition of any fines against him, no matter how small, and am also opposed to taxing of these costs against him in a large amount.