STATE EX REL. NEBRASKA STATE BAR ASSOCIATION,
RELATOR, v. H. J. PINKETT, RESPONDENT.
60 N. W. 2d 641

Filed October 23, 1953. No. 33135.

*Clarence S. Beck,* Attorney General, and *Dean G. Kratz,* for relator.

*H. J. Pinkett,* pro se.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an original proceeding questioning the right of the respondent, H. J. Pinkett, to continue in the practice of law because of conduct alleged to be in violation of his duties and obligations as a practicing lawyer. After the filing of the complaint the matter was referred to Wilber S. Aten, referee, for hearing, report, and recommendation. A hearing was had and the report of the referee made, in which it was determined that the

(509)

charge was not sustained by sufficient evidence. The relator moved for a disciplinary order notwithstanding the decision of the referee. The respondent moved for judgment upon the report of the referee. These motions present the question to be here decided.

The evidence shows that one Richard Bryant was charged, prior to February 18, 1950, with first degree murder. On the last named date respondent was called to the home of W. B. Bryant, the attorney for Richard Bryant, and requested to aid in the trial of the case which was to commence on February 20, 1950. On February 19, 1950, he met Richard Bryant and agreed to help with his defense for a fee of $250, which offer was accepted. Richard Bryant thereupon paid him $10 and gave him a note for $240. During the trial, which commenced on February 20, 1950, Richard Bryant paid respondent $100 which was credited on the note. He thereafter made four payments of $5 each. The remaining $120 due on the note was never paid, so far as the record shows.

The jury found Richard Bryant guilty of murder in the second degree on or about February 23, 1950. Richard Bryant thereupon entered into a written contract with the respondent by which the latter agreed to perfect an "appeal" to the Supreme Court for a total consideration of $400. The contract states that $300 was to be paid on the signing of the agreement and $100 "within the time when the Bill of Exceptions is ready for approval and filing." Out of the total sum of $400, respondent was to pay for the bill of exceptions, the printing of the brief, and all costs in the district court and Supreme Court, except the cost of bonds. The $300 was paid in cash. The $100 remains unpaid. Richard Bryant disappeared while out on bond and is now a fugitive from justice.

The transcript was ordered and filed in the Supreme Court. A bill of exceptions was ordered. The time for preparing and serving the bill of exceptions was Sep-

tember 8, 1950. On the latter date the court reporter delivered the bill of exceptions to respondent who gave his check for $100 therefor. The court reporter discovered that the bank upon which the check was drawn would not honor it and demanded and received back the bill of exceptions. Respondent withdrew from the case at the instance of W. B. Bryant on October 10, 1950. Subsequent to this date he received and paid the court reporter for the bill of exceptions.

The record indicates that W. B. Bryant was hospitalized for a considerable period following the completion of the trial in the district court. This delayed a hearing on the motion for a new trial in the murder case. Respondent filed two affidavits with the clerk of the district court, which purported to establish misconduct on the part of the jury sufficient to vitiate the verdict. On the hearing on the motion for a new trial, both W. B. Bryant and the respondent neglected to offer such affidavits in evidence, a fact which was not discovered until later. Respondent contends that on August 28, 1950, he determined in view of this latter fact not to file the bill of exceptions in the Supreme Court and to rely solely upon the invalidity of the verdict as shown by the affidavits appearing in the transcript. He states that his decision was influenced largely by proof offered by the State that Richard Bryant had been convicted of felonies on four different occasions after Bryant testified that he had been convicted but once. Respondent states that he accepted and paid for the bill of exceptions after he was out of the case because he had ordered and agreed to pay the court reporter for it.

The relator infers throughout its case that the $100 paid to the respondent on February 20, 1950, was to be used to pay for the bill of exceptions. The evidence will not sustain such a finding. Respondent testifies that it was needed to carry on certain investigations during the course of the trial and that it was properly credited on the note given for repondent's services in the

district court. It could hardly have been given as payment for a bill of exceptions when the district court trial was not completed at the time the payment was made. The need for a bill of exceptions had not at that time arisen. For ought the parties knew, the verdict could have been such that no review would have been sought. We think the evidence as to this $100 payment falls far short of establishing that respondent commingled, with his own, money that was given to him for the purpose of paying for a bill of exceptions.

The relator then asserts that, according to the provisions of the written agreement, respondent was obligated to pay for the bill of exceptions. We point out· that respondent was to receive $400 for his services out of which he was to pay for the bill of exceptions, the printing of the brief, and the costs of perfecting the appeal. The written agreement specifically provides that $300 was to be paid in cash and $100 "within the time when the Bill of Exceptions is ready for approval and filing." This leaves a clear inference that the $100 was intended to be used in payment of the cost of preparing and filing the bill of exceptions. This $100 was never paid. We cannot say, therefore, that respondent used funds as his own which were given to him for the specific purpose of paying for the bill of exceptions. There is conflicting evidence which indicates that respondent may have negligently failed to procure a bill of exceptions within the maximum time allowed. There is also evidence in the record that Richard Bryant was dealing directly with the court reporter. There is some undisputed evidence that the bill of exceptions was not fully prepared until November 1, 1950, or thereabouts. This, coupled with the plain terms of the contract of employment that the last $100 would be paid when the bill of exceptions was ready for approval and filing, dissipates any claim that the evidence is sufficient to sustain a finding that respondent violated his duty as a lawyer in this respect.

It is urged also that respondent failed in his duty as a lawyer and thereby subjected himself to discipline when he failed to offer the affidavits in evidence purporting to establish misconduct of the jury sufficient to vitiate the verdict. While this court has many times held that all evidence to be considered on a review of a case must be contained in a bill of exceptions, the failure to include affidavits, and other evidence as well, in the bill of exceptions is an error that is too frequently made. Bryant v. State, 153 Neb. 490, 45 N. W. 2d 169; Darlington v. State, 153 Neb. 274, 44 N. W. 2d 468. The number of decisions of this court on the subject affords sufficient proof of that fact. Honest mistake does not ordinarily afford a basis for disciplinary action. If it did, the practice of law would indeed be a hazardous profession.

We have stated many times that while a disciplinary proceeding is not criminal in its nature, the presumption of innocence applies and the culpability of the person charged must be established by a clear preponderance of the evidence. State ex rel. Nebraska State Bar Assn. v. Gudmundsen, 145 Neb. 324, 16 N. W. 2d 474. We hold that relator has failed to establish by the required weight of the evidence that respondent violated his duty as a lawyer with reference to Canons 5, 11, 29, or 32 of the Canons of Professional Ethics, as charged in the complaint.

We sustain the findings of the referee that the evidence produced at the hearing is not sufficient to sustain the necessary elements of the charge set forth in the complaint and that the respondent is not subject to disciplinary action. The complaint of the relator is therefore dismissed.

JUDGMENT FOR RESPONDENT.