STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, v. ELVEN A. BUTTERFIELD, RESPONDENT.

111 N. W. 2d 543

Filed November 10, 1961. No. 34597.

*Clarence A. H. Meyer,* Attorney General, and *Gerald S. Vitamvas,* for relator.

*Chambers, Holland, Dudgeon & Hastings* and *Jesse L. Dougherty,* for respondent.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is a proceeding to secure the reinstatement of an attorney to the practice of law after the termination of a suspension order issued by this court in a disciplinary action.

The respondent was suspended from the practice of law on October 23, 1959, the order becoming effective 30 days thereafter. State ex rel. Nebraska State Bar Assn. v. Butterfield, 169 Neb. 119, 98 N. W. 2d 714. In accordance with the order respondent on June 1, 1960, filed his application for reinstatement. On June 7, 1960, the Attorney General filed a report suggesting that respondent had engaged in the practice of law during the period of his suspension and had not therefore complied

with the order of suspension, and that he was not therefore entitled to be reinstated. The matter was referred to Donald F. Sampson, referee, for hearing, with instructions to report his findings of fact and conclusions of law. The referee filed his report with this court on January 20, 1961, finding against the respondent and recommending that this court make such further order as it deemed appropriate. The matter is before this court on the record made before the referee, the referee's report, and the exceptions taken thereto.

Two questions are for the determination of the court in this proceeding. The first is whether or not respondent has violated the order of suspension by engaging in the practice of law, and the second is whether or not respondent has made a sufficient affirmative showing that he will not in the future, if reinstated, engage in any practice offensive to the profession of the law.

Relator contends that respondent has not complied with the order of suspension in that he has engaged in the practice of law during the period that it was in effect. The record shows and the respondent admits that he drew deeds, mortgages, and releases. The record shows that he made out income tax returns and advertised his availability for such work. The record also shows that he on one occasion drafted a will and supervised its execution. It further shows that on one occasion he drafted a power of attorney. Relator contends that the doing of these acts during the period of respondent's suspension, when previously performed in his capacity as a lawyer, constitutes the practice of law. Respondent contends that the conveyances and releases were made in his capacity as a licensed real estate broker, notary public, abstracter, and loan agent.

The Supreme Court of this state has the inherent power to define and regulate the practice of law in this state. State ex rel. Johnson v. Childe, 147 Neb. 527, 23 N. W. 2d 720. While an all-embracing definition of

the term "practicing law" would involve great difficulty, it is generally defined as the giving of advice or rendition of any sort of service by a person, firm, or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill. State ex rel. Hunter v. Kirk, 133 Neb. 625, 276 N. W. 380. In an ever-changing economic and social order, the "practice of law" must necessarily change, making it practically impossible to formulate an enduring definition. Grand Rapids Bar Assn. v. Denkema, 290 Mich. 56, 287 N. W. 377. In determining what constitutes the practice of law it is the character of the act and not the place where the act is performed that is the controlling factor. State ex rel. Hunter v. Kirk, *supra.* Whether or not a fee is charged is not a decisive factor in determining if one has engaged in the practice of law. State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95.

The drafting of a will and the supervising of its execution constitutes the practice of law. Gardner v. Conway, 234 Minn. 468, 48 N. W. 2d 788; People ex rel. Committee on Grievances of Colorado Bar Assn. v. Denver Clearing House Banks, 99 Colo. 50, 59 P. 2d 468; Biakanja v. Irving, 49 Cal. 2d 647, 320 P. 2d 16, 65 A. L. R. 2d 1358; Grand Rapids Bar Assn. v. Denkema, *supra.* The drafting of a power of attorney constitutes the practice of law since the drafting of such an instrument involves the exercise of legal skill and training. The respondent clearly engaged in the practice of law in these two instances.

Disbarment is the severance of the status and privileges of an attorney, whereas suspension is the temporary forced withdrawal from the exercise of office, powers, prerogatives, and privileges of a member of the bar. In re Oliver, 97 Utah 1, 89 P. 2d 229; State ex rel. The Florida Bar v. Evans (Fla.), 109 So. 2d 881. A suspended lawyer is therefore under the same obligation to comply with the Canons of Professional Ethics as is a

lawyer in the active practice. The conduct of the respondent, in advertising in the public press his availability to prepare income tax returns, is therefore violative of Canon 27 of the Canons of Professional Ethics adopted by this court.

The respondent admits that he prepared deeds, mortgages, releases, and income tax returns during the period of his suspension. Admittedly respondent performed such work prior to his suspension. Some were performed in relation to real estate transactions in which he was the real estate broker, but in others he was not. It seems clear to us that the doing of such work is within the province of a lawyer to do. It is properly identified as the practice of law, whether or not it might under some circumstances be properly performed by others not admitted to the bar. An order of suspension deprives the suspended lawyer from performing any service recognized as the practice of law and which is usually performed by lawyers in the active practice of law. It is the contention of respondent that these services were performed in his capacity as a licensed real estate broker, notary public, abstracter, and loan agent. It is not necessary for us to determine in this case if and under what circumstances others might perform such services, although not admitted to the bar. A suspended lawyer, who in connection with his law office engages in other activities, is in no different position than the active lawyer who confines himself solely to the practice of law in determining if the suspension order was violated. Where one is generally known in a community as a lawyer, it might well be impossible to divorce two occupations closely related if the rule were otherwise. A suspended lawyer will not be heard to say that services recognized as within the practice of law were performed in some other capacity when he is called to account.

It is contended that the violations, if any, were isolated in character and cannot be said to constitute the

practice of law within the meaning of the order of suspension. In this respect we point out that one objection to the reinstatement of respondent is that he engaged in the practice of law in violation of the order of suspension. Even if the violations were isolated ones, and the record shows they were not, they constitute the practice of law and are violative of the court's suspension order. People v. Ring, 26 Cal. App. 2d 768, 70 P. 2d 281.

A suspended lawyer is required to affirmatively show, as the order of suspension provides, that he will not in the future engage in any practice offensive to the practice of law. Whether or not such a showing is sufficient is dependent upon the record before us and his prior conduct as reflected in the records of this court. See In re Riccardi, 80 Cal. App. 66, 251 P. 650. The character of the respondent in a disciplinary proceeding, and the question of his reformation as to his previous unethical conduct, are of great importance in determining whether or not a reinstatement should be granted.

The records of this court show that respondent was punished for contempt in 1944. Butterfield v. State, 144 Neb. 388, 13 N. W. 2d 572, 151 A. L. R. 745. The opinion in that case shows that respondent abstracted a page of a pleading and substituted another with intent to deceive and mislead the court. Respondent also made false statements to the court in that case with intent to deceive the court. Respondent was found guilty of the foregoing charges and punished for contempt. The respondent denied the charges throughout the trial. So far as the records show, respondent has never admitted any wrongdoing, but has in fact explained it as the work of fellow lawyers who bore him ill will, with the implication that he had done no wrong.

Discipline was imposed in the instant case for unprofessional conduct in that respondent falsely acknowledged a warranty deed and testified falsely in court with reference to the same. On June 1, 1960, respondent

filed his application for reinstatement, asserting that he had complied with the suspension order and if reinstated in the practice of law he would not engage in any practice offensive to the legal profession. We find nothing in his application that indicates that he had any feeling of wrongdoing on his part, or that he was repentant of his conduct. His application is supported by many affidavits, most of them by laymen. Most of these affiants assert the high character and good reputation of respondent and state that the discipline imposed by this court was the result of the personal animosity of other lawyers in Antelope County. While the record does not disclose who prepared these affidavits, respondent attached them to his application, thereby adopting their contents as being in support of his application.

On the hearing of the matter of respondent's reinstatement before the referee, respondent excused his conduct by asserting that certain attorneys and a district judge in a neighboring district were after him and were working for his disbarment. Several of the affiants who had made similar statements in their affidavits were called as witnesses at the hearing before the referee. Neither the respondent nor these affiants were able to disclose one shred of evidence as to the truth of these statements. Three lawyers gave supporting affidavits. One lawyer from a neighboring county stated that respondent was of good character, was a good lawyer, and in his opinion should be reinstated. The other two lawyers merely stated that so far as they knew the respondent had not practiced law during the period of his suspension.

The evidence shows that at the hearing before the referee the respondent did at one time state that he realized what he had done was wrong and that if readmitted to the practice he would do his best to comply with the rules of court and the ethics of the profession. At no time prior to the hearing, and not until the last day of the trial, did respondent express any regret for

his conduct. We point out that his attitude can best be arrived at from his acts rather than his self-serving declarations required by the exigency of the occasion. The record discloses that on the morning of the effective date of the suspension order respondent made certain changes on the windows of his law office. From the sign "Law Office" he removed the letters "L" and "w" from the word "Law." On another window he removed the letters "At" and "ey" from the word "Attorney." The signs thereafter read "a Office" and "torn." While we do not say that what he there did was in violation of the suspension order, it indicates the intent and state of mind of respondent. When a friend called it to his attention that the bar association would question the manner in which the signs were left, he assumed an attitude of defiance. The effect of what he did was to make light of his suspension and to taunt other members of the bar. At no time did respondent, prior to or at the hearing before the referee, apologize for or express any regret for the manner in which he left these signs throughout the period of his suspension.

There are many affidavits by laymen stating that his general reputation for honesty and good character in the community was good. Lay witnesses at the hearing before the referee likewise testified to this fact. Not one, however, had any knowledge of the acts committed by the respondent. They appeared to accept the statement of respondent that he was the victim of jealous, greedy, and unprincipled fellow lawyers and judges. By this method he excused his own misdeeds and cast aspersions upon reputable fellow lawyers. Such affidavits can have little weight, if any, in determining the issues before this court in the present case. Personal popularity does not purge professional delinquency.

We find that respondent has not affirmatively shown that he would in the future abstain from unethical practices and conduct himself as an ethical member of the profession. The contempt proceeding brought against

him in 1944 indicates a complete disregard for honesty and ethics. The proceeding resulting in his suspension in 1959 showed that he executed a false acknowledgment of a deed and testified falsely in court when the deed became involved in litigation. And now, in the proceeding for his reinstatement he admits to the performance of acts which constitute the practice of law, contends that he is the victim of jealous lawyers, and infers that this is the sole cause of his troubles without fault on his part. It is evident that respondent has never admitted any dereliction on his part, and has justified and condoned his conduct in his home community by asserting that certain judges and lawyers are out to get him because of jealousy and personal dislike. During the period of his suspension he has maintained an attitude of defiance, he has held up his suspension to public ridicule, and he has taunted other members of the bar by his affirmative acts. He has been willing to justify his own unethical conduct by falsely charging that judges and other members of the bar engaged in a conspiracy to deprive him of his right to practice. His success in thus capitalizing upon his own misconduct is evidenced by the numerous affidavits of laymen who testify to his good character and reputation, some of which appear almost fanatical in their approach. Not until the last day of the hearing before the referee, and after many opportunities to do so, did respondent ever acknowledge any wrongdoing on his part or express any regret therefor. The record shows that he has no regrets for what he has done, except when the exigencies of litigation require, and is willing to condone his acts by false countercharges against others. His attitude is one of defiance rather than submission to the final judgment of this court. He has chosen to flaunt his suspension and to demonstrate contempt for other lawyers and the courts of which he is an officer. He has shown that previous proceedings against him have been ineffective as corrective measures. It cannot be over-

looked that this is the third time that respondent has been called upon to answer as to his conduct before this court. We submit that the evidence shows respondent has no regard for the ethics of the legal profession and if he is reinstated we have no reasonable assurance that he would conduct himself any differently than he has in the past.

A primary question for determination on an application for reinstatement to the bar of one suspended from active practice under a suspension order such as we have here is the present fitness of the applicant to again exercise the privileges and functions of an attorney, as an officer of the court and confidential adviser in the affairs of others entrusted to his care and keeping, in view of his previous conduct, the discipline imposed, and any reformation of character wrought thereby, or otherwise, as shown by his more recent conduct. Respondent's previous conception of the serious nature of his acts and, what is more important, his subsequent conduct and attitude toward the courts and the practice of law do not appear to have undergone any change. He must affirmatively demonstrate his reformation. Lawyers are regarded as officers of the court. A lawyer has an obligation to uphold the integrity and dignity of the courts. He has a responsibility to the public to assist in bringing about the proper administration of justice. It is of utmost importance that the honor and integrity of the legal profession should be preserved and that its members be without reproach. The malpractice of one reflects dishonor not only upon the legal profession but upon the courts themselves, and creates among the people a distrust of the courts and the bar. One proven to have violated these conditions of good behavior and professional integrity, in applying for reinstatement, has the burden of overcoming by persuasive evidence the former judgment of his disqualification. In re Stump, 272 Ky. 593, 114 S. W. 2d 1094; In re Smith, 220 Minn. 197, 19 N. W. 2d 324; In re Egan, 52 S. D.

394, 218 N. W. 1. There is nothing in this record tending to show an appreciation by the respondent of the serious nature of his misconduct, or any acknowledgment of error, except in the one instance when it appeared necessary for the success of his case. We cannot in good conscience certify to the bench and bar and to the public generally that respondent has shown himself worthy of reinstatement.

The application for reinstatement is denied and, pursuant to the terms of the order of suspension, respondent is disbarred and his name ordered stricken from the roll of attorneys in this state.

REINSTATEMENT DENIED.

RESPONDENT DISBARRED.

BROWER, J., concurring in part and dissenting in part.

I must respectfully dissent from the opinion of the court herein though I agree in the result as applied to the respondent.

The record shows that the respondent during the period of suspension drew a will. He was first consulted at his office by a nephew of the deceased husband of the testatrix concerning its execution. The testatrix had been his former client. He went to her home and consulted her in the presence of relatives in regard to the will's contents. He made notes there and took them to his office. Thereafter he drew the will, procured the witnesses, and attended to its execution. Respondent claims it was largely copied from a previous will which is not in the record. In any event a new will, which because of her husband's death was a different will, was drawn by him. Respondent also drew, attended to its execution, and took the acknowledgment on a power of attorney for this same lady after consultation with her and her relatives. It was written on a blank form but it was necessary to set out, prescribe, and delineate the power conferred. The drawing of a will has been held by the cases cited in the court's opinion and by the referee in his report as practicing law. Under the

circumstances the drawing of the power of attorney was likewise practicing law. It is true that these instruments were only two in number, but the court in its opinion ordering the suspension particularly provided in State ex rel. Nebraska State Bar Assn. v. Butterfield, 169 Neb. 119, 98 N. W. 2d 714, as follows: "However, if he fails within a reasonable time to make such showing or fails to strictly comply with this order of suspension, then his suspension shall become permanent and an order of disbarment will necessarily follow." Respondent contends he did not charge for the services and that they were isolated incidents which the court should overlook. The charging of fees is not essential to the practice of law as shown in the court's opinion. It seems apparent that he sought to perform legal services for these clients whom he considered valuable clients and whose work he desired to do in the future. Under these circumstances he was consciously practicing law and his showing, even considering these cases alone, did not show strict compliance with the court's order. If more is necessary his general attitude as set out in the court's opinion, and which it is unnecessary for me to again detail here, shows that he has no conception of his own wrongdoing and blames his plight on others whom he states have sought to injure him but without having any tangible reasons therefor. He has not met the burden of proof required of him to show that he is entitled to reinstatement. I concur with the court in its refusal to reinstate the respondent and in ordering him disbarred.

In my own opinion this was about all that was necessary to decide in this matter. Generally speaking, I feel the court should restrict its opinion to the matters necessary to decide the case at hand and that such a rule is very salutory and is appropriate here.

I cannot agree with the opinion of the court holding that a suspended lawyer may not do those things which might properly be performed by persons not admitted to the bar. No authorities are cited which sustain this

proposition. The referee in his report could find none.

The court's opinion cites In re Oliver, 97 Utah 1, 89 P. 2d 229, and State ex rel. The Florida Bar v. Evans (Fla.), 109 So. 2d 881, on the proposition that a suspended lawyer is still a lawyer. It then states that a suspended lawyer is still obligated to comply with the canons of the profession. It does not necessarily follow of course that the suspended lawyer could not do that which a layman, broker, real estate agent, tax accountant, abstracter, or notary could lawfully do. The first of these cases merely holds that immoral acts in private life which would have barred admission might be considered on a question of reinstatement. The second of the cases holds that under Florida practice a suspended attorney at the end of the period of suspension might resume practice without doing anything.

The majority opinion concedes that a definition of the term "practicing law" involves great difficulty. It implies that the preparation of deeds, mortgages, releases, and income tax returns may be performed by persons not admitted to the bar. An examination of the authorities in the note cited by the referee in 53 A. L. R. 2d 788, as well as the previous notes therein mentioned, 111 A. L. R. 19, 125 A. L. R. 1173, and 151 A. L. R. 781, would indicate that in many instances real estate agents, brokers, managers, or accountants, and, in some instances, even laymen, could properly prepare them.

The court held that because these acts are also a proper part of the practice of law, they cannot be performed in any other capacity by a suspended lawyer if he is ever to be reinstated.

In some instances one's law practice is his principal occupation and the other occupations are but incidents to it. In others the occupation of a broker, land agent, and income tax accountant constitute the major portion of one's business. I cannot believe that one must desist from vital matters in such other occupations in which he is engaged to permit hope of reinstatement,

and that he must seek an entirely different avocation and permit his established business in other lines to deteriorate also.

It would appear these rules need not have been adopted to decide this case and that they have only prospective value. That being true, they should, if necessary, have been either promulgated in proper rules of the court or Canons of Professional Ethics or the court should have awaited cases where their application became necessary and when others interested beside the respondent could be heard.

YEAGER, J., dissenting.

I think I am no less jealous of the integrity, learning in the law, and the ethical standards which should obtain and be maintained by the individual members and by the bar as a whole than those who joined in the majority opinion in this proceeding.

I think also that I am as zealous as these in my desire to protect the profession and the public from admission of those who are not clothed with the high standards which have been traditional from the beginning in this jurisdiction, and my desire for the dismissal or discipline of any and all of those who have become violators of these standards and this tradition.

In arriving at a conclusion as to whether or not a member of the bar has acquitted himself in conformity generally with his duties and obligations or as applied to a situation such as the present inquiry whether or not he has transgressed and continues to transgress his professional obligations, I commit myself to the unalterable view that where there has been, as here, transgression and suspension with a declaration of the right to restoration in due time on conditions prescribed, with which conditions there has been a compliance by the party, restoration should be allowed in the absence of a showing of overt significance that there is or has been during the period of suspension demonstration that the

right of the party to return to the practice of his profession should not be restored.

By a showing of overt significance I mean statements of fact evidentiary in and of themselves or statement of charges sustained by some character of evidence, as distinguished from mere generalizations, hearsay, and personal unsupported beliefs.

The record in the present proceeding discloses that the respondent in response to the requirements of the order of suspension made application for reinstatement supported by a showing that he was entitled thereto. It cannot be well said that on its face this showing was not in all respects sufficient.

After this showing was made protests were filed in resistance to his application. These protests were for the most part generalities, opinions based upon hearsay, even in large part without a disclosure of the source of the hearsay, and personal unsupported beliefs. This portion of the protests, in the terms I have used, was without any overt significance.

If this portion had been disregarded by this court it would be of no consequence here. The majority opinion however makes it clear that it had a substantial if not a major influence upon the decision which was rendered.

I assert that it was entitled to no consideration whatever. Its consideration was violative of one of the paramount and basic principles of American jurisprudence. That principle is that evidence such as this, if it may indeed be regarded as evidence, is not acceptable as proof of wrongdoing.

It is quite true that this action is sui generis and is neither civil nor criminal in a true sense, but in it the respondent is charged as a wrongdoer. I doubt if anyone to whom this is a matter of concern would contend for a moment that the respondent was not entitled to reinstatement without the charges made being sustained by evidence of probative value. See, State v. Fisher, 103 Neb. 736, 174 N. W. 320; State ex rel. Nebraska State

Bar Assn. v. Price, 144 Neb. 542, 13 N. W. 2d 714; State ex rel. Nebraska State Bar Assn. v. Gudmundsen, 145 Neb. 324, 16 N. W. 2d 474; State ex rel. Nebraska State Bar Assn. v. Pinkett, 157 Neb. 509, 60 N. W. 2d 641; State ex rel. Nebraska State Bar Assn. v. Richards, 165 Neb. 80, 84 N. W. 2d 136.

There are but four incidents or types of incident relative to practice of law during the period of suspension. Three of these will be discussed as one. In these are included the drafting of deeds, mortgages, releases of mortgages, drawing contracts, making out income tax returns, and drawing a power of attorney. There can be no doubt about his doing these things. Of course he did.

It does not follow however that when he did so he was engaged in the practice of law. While it is true that these things bear a close relationship to the practice of law, each and all of them may be done without engagement in the practice of law, even though done by one learned in the profession. The only evidence in this record in these areas is that he did these things but there is nothing to contradict his evidence that in doing so he did not engage in the practice of law, except a suspicion that he was not telling the truth.

As to the matter of the will the evidentiary situation is the same as it is with the incidents involved in the other areas including the declaration by the respondent that he did not under the circumstances engage in the practice of law. Without going into detail, the effect of the evidence of the respondent is that he prepared the will under the direction of the maker. There is no denial of this. The majority opinion points out that the drafting and supervision of a will constitutes the practice of law. The evidence does show making but not supervision. The evidence indicates that the supervision was that of the maker pursuant to the provisions of another will which had been drafted and supervised, it is true, by the respondent but while he was in good

standing as a member of the bar. By the measure declared in the majority opinion this was not practicing law and the charge, like the others mentioned, is supported only by suspicion.

There is no clear line as to what may and what may not be declared the practice of law in the making of wills. This being true it ought not to be said on this record that what he did was practicing law and on that account he had forfeited his right to a restoration of his license to practice law.

In the record is evidence of incidents of display of temperament, anger, disappointment, and resentment, which represented in some measure a contemptuous attitude on the part of respondent, but I am constrained to conclude that this was not sufficient upon which to base a refusal of this court to restore his license to practice law.

SIMMONS, C. J., concurring in dissent.

I concur in Judge Yeager's dissent. I desire to add a bit thereto.

In connection with Judge Yeager's discussion of the evidence, I desire to direct attention to the standard of quality of evidence which we have stated is applicable in this type of case. It is: "The findings to sustain disbarment must be sustained by a higher degree of proof than that required in civil actions, yet falling short of the proof required to sustain a conviction in a criminal action." State ex rel. Nebraska State Bar Assn. v. Richards, 165 Neb. 80, 84 N. W. 2d 136.

It now appears that when the respondent was suspended we left him with a sword of Damocles hanging over his head in that we deprived him of all the rights of a lawyer while suspended but now hold him subject to all the standards of a lawyer during that period.

A suspended lawyer has to live and do and earn. Respondent is now being disbarred for doing those things which it is common knowledge are done by laymen without citations for contempt for practicing law. He

should not be held to have forfeited being restored to the status of a lawyer because of it.