STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, v. GEORGE W. WIEBUSCH, RESPONDENT.

45 N. W: 2d 583

Filed January 12, 1951. No. 32936.

*Clarence S. Beck, Attorney General,* and *Bert L. Overcash,* for relator.

*George W. Wiebusch,* pro se.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a disciplinary proceeding initiated by relator in conformity with rules of this court against respondent, a lawyer duly admitted and licensed to practice his profession in this state.

The formal complaint filed in this court alleged in paragraph II that from January 1941 to January 1949, respondent was the duly elected, qualified, and acting county judge of Custer County, Nebraska, which at all times had a population of more than 16,000, as designated in section 7-111, R. S. 1943.

Paragraph III alleged generally that respondent had been guilty of unprofessional conduct and violation of the laws of the state and canons of ethics of the Nebraska State Bar Association governing Nebraska lawyers in the practice of their profession by acts and practices thereinafter recited and described substantially as follows:

Paragraph IV alleged that prior to December 1, 1948, while respondent was county judge as aforesaid, he prepared a petition for appointment of an administrator in the matter of the estate of Charles Hircock, deceased, and on December 1, 1948, filed said petition in his own court and accepted employment and acted as attorney for petitioner in said matter in his own court, having

theretofore written letters to petitioner recommending himself to act as such attorney.

Paragraph V alleged that on or about September 21, 1948, respondent prepared a petition for the administration of the estate of William Ward Henman, filed it on that date in his own court, acted not only as attorney for the administrator but also as county judge all through said proceedings, and collected an attorney's fee in said cause as attorney for the administrator.

Paragraph VI alleged that on or about September 15, 1948, respondent prepared and filed a petition in his own court for administration of the estate of Anna Schneringer, deceased; prepared all of the papers in the administration of said estate; and acted not only as attorney for the administrator but also as county judge during most of the proceedings, and collected a fee as attorney for the administrator.

Paragraph VII alleged that on or about December 1, 1948, respondent prepared and filed in his own court a petition seeking decree of heirship of one Charles Deal and throughout said proceedings and until decree was entered, acted therein not only as attorney for petitioner, Mary Etta Amsberry, but also as county judge, and collected a fee as attorney for such services.

Paragraph VIII alleged that on or about September 15, 1948, respondent, while the duly elected, qualified, and acting county judge of Custer County, prepared and on October 19, 1948, filed a petition in the district court for Custer County to foreclose a tax sale certificate, conducted said case to conclusion, received the proceeds of said sale as attorney for plaintiff therein, and charged and collected a fee for acting as such attorney.

Paragraph IX alleged that on October 10, 1948, respondent prepared and filed in his own court a complaint in forcible entry and detainer as attorney for plaintiff. Also, at the same time, respondent filed a disqualification, and prepared a summons which the acting county judge signed on October 19, 1948. There-

after, all of the papers involved in said cause, including the judgment entered on November 3, 1948, were prepared and filed by respondent without the acting judge being present in court or conducting a hearing and trial therein.

Other charges, alleging misconduct, were set forth in paragraphs X and XI, but as hereinafter observed, not being admitted by respondent in his answer, they need not be reiterated here.

Paragraph XII alleged that respondent practiced law generally while acting as county judge, maintained a law office downtown, and practiced law therein while he was county judge, and on August 12, 1948, entered into a division of fees contract with another lawyer.

To the foregoing complaint, respondent duly filed an unverified answer which contained no general denial. Rather, it admitted the allegations of aforesaid paragraphs II, IV, V, VI, VII, VIII, and IX; admitted, as alleged in paragraph XII that on August 12, 1948, he entered into a contract with another lawyer for the purpose of forming a law partnership, but alleged that it was to be effective only at the conclusion of his term of office as county judge, and that he had not participated in any division of fees with such attorney during his term of office. He also admitted that "during the summer of the last year of his term as County Judge respondent was in the process of building a law office which building was ready for occupancy about September 1, 1948," and that "for about four months just prior to the end of his term as County Judge he spent his time in his own office building except such times as official duties required his attendance at the Court House."

His answer also alleged as conclusions of law that "in all matters of law practice participated in by him while he held the office of County Judge, he at no time did anything which tainted of using his judicial position to further his professional success," that "at no time did

he do anything which would cause anyone having business before the County Court to feel that his matter would not be heard fairly and impartially and just disposition made" and "that notwithstanding the infractions complained of and admitted, he is a fit person to be trusted with the duties and responsibilities belonging to the office of attorney."

Relator's complaint prayed that this court take such disciplinary action as it deems just and proper, and respondent's answer prayed that this court should make such disposition of the matter as it deems just and proper. The matter was finally briefed, argued, and submitted to this court by relator and respondent, upon relator's motion for judgment of disbarment upon the aforesaid pleadings filed by the parties. We sustain the motion of relator, bearing in mind that a motion for judgment on the pleadings admits facts well pleaded or admitted in an answer but does not admit conclusions of law. Shambaugh v. Buffalo County, 137 Neb. 434, 289 N. W. 873.

This court held in State ex rel. Sorensen v. Scoville, 123 Neb. 457, 243 N. W. 269, a disbarment proceeding, that: "Where, upon statements in the pleadings, one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court." See, also, Part III, section 6, Disciplinary Proceedings, Rules of the Supreme Court. Reaffirming a rule established and followed in this jurisdiction since 1886, the afore-cited case also held: " 'In granting a license to practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts.' " Such rule has been reaffirmed and followed in cases too numerous to cite.

It is as well established that: "The purpose of a disbarment proceeding is not so much to punish the attorney as it is to determine in the public interest whether he

should be permitted to practice." State ex rel. Sorensen v. Ireland, 125 Neb. 570, 251 N. W. 119. See, also, State ex rel. Spillman v. Priest, 123 Neb. 241, 242 N. W. 433.

It is equally well established that: "An attorney, as an officer of this court, must so conduct himself as to assist in maintaining confidence in the integrity and impartiality of the courts." State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N. W. 32.

In State ex rel. Nebraska State Bar Association v. Niklaus, 149 Neb. 859, 33 N. W. 2d 145, this court held that: "An attorney owes his first duty to the court. He assumed his obligations toward it before he ever had a client. His oath requires him to be absolutely honest even though his client's interests may seem to require a contrary course. A lawyer cannot serve two masters; and the one he has undertaken to serve primarily is the court.

"A duty rests on the courts to maintain the integrity of the legal profession by disbarring attorneys who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate a fraud on the courts, or to corrupt and defeat the administration of justice."

In State ex rel. Hunter v. Crocker, 132 Neb. 214, 271 N. W. 444, this court held that: "Canons of ethics and rules governing professional conduct among attorneys are recognized and applied by courts in proper cases."

The foregoing holdings and statements are not without support in the texts. For example, in 7 C. J. S., Attorney and Client, § 19, p. 733, it is said: "Any conduct on the part of an attorney evidencing his unfitness for the confidence and trust which attend the relationship of attorney and client or unworthy of public confidence constitutes a ground for suspension or disbarment." In section 23, p. 741, it is said: "Violation of codes of ethics or any conduct on the part of an attorney in his professional capacity which tends to bring reproach on the legal profession constitutes ground for suspension or

disbarment." In section 23, p. 753, it is said: "Conduct on the part of an attorney tending to subvert or obstruct justice is a ground for suspension or disbarment." Again, in section 23, p. 756, we find this statement: "Misconduct of an attorney acting in an official capacity, such as judge, prosecuting attorney, or the like, has been held to constitute a ground for his suspension or disbarment." See, also, 5 Am. Jur., Attorneys at Law, § 278, p. 428; Weston v. Board of Governors, 177 Okl. 467, 61 P. 2d 229.

In conformity with the foregoing authorities, we hold that this court has the jurisdiction and authority to hear and decide charges against a lawyer of disbarable offenses rendering him unfit to be permitted to continue the practice of law, even though the offenses occurred while he held judicial office.

As provided by Part IV, Article X, Integration of the Bar, Rules of the Supreme Court: "The ethical standards relating to the practice of law in this State shall be the canons of Professional Ethics of the American Bar Association, including the additions and amendments as of January 1, 1945, thereto, and those which may from time to time be approved by the Supreme Court."

As applicable here, then, the Canons of Judicial Ethics of the American Bar Association and the Nebraska State Bar Association, provide as follows:

Section 1: "The assumption of the office of Judge casts upon the incumbent duties in respect to his personal conduct which concern his relation to the state and its inhabitants, the litigants before him, the principles of law, the practitioners of law in his Court, and the witnesses, jurors and attendants who aid him in the administration of its functions."

Section 3: "It is the duty of all Judges in the United States to support the federal Constitution and that of the state whose laws they administer; in so doing, they

should fearlessly observe and apply fundamental limitations and guarantees."

Section 4: "A Judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties; but also in his everyday life, should be beyond reproach.".

Section 13: "A Judge should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person."

Section 24: "A Judge should not accept inconsistent duties; nor incur obligations, pecuniary or otherwise, which will in any way interfere or appear to interfere with his devotion to the expeditious and proper administration of his official functions."

Section 31: "In many states the practice of law by one holding judicial position is forbidden. In Superior Courts of general jurisdiction, it should never be permitted. In inferior Courts in some states, it is permitted because the county or municipality is not able to pay adequate living compensation for a competent Judge. In such cases one who practices law is in a position of great delicacy and must be scrupulously careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success.

"He should not practice in the Court in which he is a Judge, even when presided over by another Judge, or appear therein for himself in any controversy.

"If forbidden to practice law, he should refrain from accepting any professional employment while in office." .

Insofar as important here, Article XV, section 1, Constitution of Nebraska, provides: "Executive and judicial officers and members of the legislature, before

they enter upon their official duties shall take and subscribe the following oath, or affirmation. I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Nebraska, and will faithfully discharge the duties of _____ according to the best of my ability, * * *." Respondent was required, as a qualification for the office, to take and subscribe to such an oath before entering upon his official duties as county judge. Duffy v. State, 60 Neb. 812, 84 N. W. 264.

Article V, section 14, Constitution of Nebraska, specifically provides: "No judge of the supreme or district courts shall act as attorney or counsellor at law in any manner whatsoever. *No county judge shall practice law in any court in any matter arising in or growing out of any proceedings in his own court.*" (Italics supplied.)

In Tucker v. Heirs of Myers, 151 Neb. 359, 37 N. W. 2d 585, it was said, after quoting the aforesaid constitutional provision: "This provision clearly means, as it applies to a county judge, that such judge may not appear as counsel in any matter in his own court or in any matter in which he would be disqualified if he had acted as county judge. By disqualifying as county judge he may not thereby remove himself from the prohibition of this constitutional provision in any matter in which he would otherwise be prohibited from engaging. * * *' When one seeks and is elected to the position of county judge, he is required to sever his relationship with all matters arising in or growing out of any proceedings in his own court." The opinion also concluded that a violation thereof would be highly improper.

Section 7-104, R. S. 1943, provides: "Every attorney upon being admitted to practice in the Supreme Court or district courts of this state, shall take and subscribe an oath substantially in the following form: 'You do solemnly swear that you will support the constitution of the United States, and the constitution of this state,

and that you will faithfully discharge the duties of an attorney and counselor, according to the best of your ability.' " Such an oath requires lawyers to faithfully discharge their duties, uphold and obey the Constitution and laws of this state, observe established standards and codes of professional ethics and honor, maintain the respect due to courts of justice, and abstain from all offensive practices which cast reproach on the courts and the bar. State ex rel. Sorensen v. Goldman, *supra;* State ex rel. Nebraska State Bar Association v. Hendrickson, 138 Neb. 846, 295 N. W. 892, 139 Neb. 522, 298 N. W. 148.

Insofar as important here, section 7-111, R. S. 1943, provides: "No person shall be permitted to practice as an attorney *in any of the courts of this state while holding the office of * * * county judge in any. county having a population of more than sixteen thousand, * * .*;* Provided, *where an attorney at law holds the office of county judge * * * he shall not be permitted to practice as an attorney in any action, matter, or proceeding brought before himself, * * * nor shall any county judge draw any paper or written instrument to be filed in his own court, except such as he is required by law to draw."* (Italics supplied.) Observance of its provisions by lawyers is mandatory, and flagrant violation thereof, as in the case at bar, is to be considered a gross offense in disciplinary proceedings despite the fact that in criminal prosecutions a violation thereof is legislatively defined as a misdemeanor punishable by fine.

As will be observed, we have before us a case wherein a duly admitted and licensed lawyer, while serving in the highly important and dignified office of county judge, a court which ultimately touches the lives and fortunes of practically all the people of the county and others residing elsewhere, admits that he repetitiously violated not only the foregoing canons of judicial ethics, but also violated his oath of admission as a lawyer, his oath of office as a judge, the Constitution of the State of Nebraska, and the statutes of this state. Further, in

violation of section 28, "Canons of Professional Ethics" for lawyers, he admittedly solicited law business by writing letters to a person having a cause to be filed and which was unlawfully filed by him in his own court, where, as a lawyer, he unlawfully prosecuted the cause, and unlawfully as judge disposed of it. More grossly flagrant violations of law and ethics by a lawyer are seldom found in the authorities.

In People ex rel. Colorado Bar Association v. Lindsey, 86 Colo. 458, 283 P. 539, a case of similar import and application, the court said: "A great jurist has said that 'No man in this country is so high that he is above the law. No officer of the law may set the law in defiance with impunity, and the sole end of courts of justice is to enforce the law.' Justice Bradley of the Supreme Court of the United States used this language in describing the relation of a lawyer to the law of the land: 'Of all classes and professions the lawyer is the most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, to trample them under foot, and to ignore the very bands of society argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous element of the body politic. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve.' Ex parte Wall, 107 U. S. 265, 274, 2 Sup. Ct. 569.

"The respondent was a sworn officer of the public; he was also a sworn officer of this court. We do not differentiate between the character and the breach of fidelity of an attorney at law and that of a judicial officer who is out of office when the complaint is made. The untrustworthiness and infidelity in the one office shows the infidelity and untrustworthiness in the other. A violation of the judicial oath only aggravates the offence (offense) of violating the oath of an attorney and counselor at law. The administration of justice, here

and elsewhere, is dependent upon the strict observance of the oath of office by every member of the bar. One of the prerequisites and indispensable qualifications for admission to the office of attorney and counselor at law in this court is, that he shall be of good moral character. This is a continuing qualification. It is a qualification necessary to entitle one to admission to the bar in the first instance, and it necessarily follows that the loss of such qualification, through misconduct, requires his suspension or removal. Unless one has the moral strength of character to stand immovable in his fidelity to duty, against the allurements of money, and to resist temptation to do those things that are prohibited by law to the judge, then he no longer possesses that indispensable moral character which the good of society and the administration of justice demand of an attorney and counselor at law.

"The respondent is a member of the bar of this court. The charges preferred against him by the Attorney General challenges his moral integrity. Just as it is the duty of this court to refuse admission to an applicant for a license, upon a showing that he lacks the necessary moral qualifications, so it is the duty of this court to remove an attorney upon a showing that he no longer possesses that indispensable moral character necessary to have his name continued upon the roll." See, also, In re Peck, 88 Conn. 447, 91 A. 274, L. R. A. 1915A 663, Ann. Cas. 1917B 227; State ex rel. Dill v. Martin, 45 Wash. 76, 87 P. 1054; In re Dellenbaugh, 17 Ohio Cir. Ct. 106, 9 Ohio Cir. Dec. 325; In re Copland, 66 Ohio App. 304, 33 N. E. 2d 857; In re Burton, 67 Utah 118, 246 P. 188; In re Rempfer, 51 S. D. 393, 216 N. W. 355, 55 A. L. R. 1346; In re Stolen, 193 Wis. 602, 214 N. W. 379, 55 A. L. R. 1355.

In the light of what has been heretofore said, we conclude that the admitted conduct of respondent disqualifies him for continuance as a member of the bar of the State of Nebraska. Accordingly, the motion of relator for judgment of disbarment is sustained; respondent's

order of admission to the bar of the state is annulled; his license to practice therein is canceled; and his name is ordered stricken from the roll of lawyers in this state.

JUDGMENT OF DISBARMENT.