STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, v. CHARLES A. FISHER,
RESPONDENT.
103 N. W. 2d 325

Filed May 27, 1960. No. 34625.

*Clarence S. Beck,* Attorney General, and *Gerald S. Vitamvas,* for relator.

*William A. Stewart, Sr., Bevin B. Bump,* and *Charles A. Fisher,* for respondent.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an original disciplinary proceeding brought in the name of the State of Nebraska on the relation of the Nebraska State Bar Association against the respondent, Charles A. Fisher. See Part III, Rule 2, Disciplinary Proceedings of the Revised Rules of the Supreme Court.

The complaint charges that: "On June 15, 1954, the respondent, while serving as counsel for the defendant Loyd Carroll Grandsinger, who was then and there being prosecuted for murder in the first degree, in the case of State of Nebraska vs. Loyd Carroll Grandsinger, then pending in the District Court of Cherry County, Nebraska, and while engaged in the trial of said cause in said court, did knowingly and contemptuously pick up a leather belt, which had been introduced in evidence and identified as Exhibit 10 in said proceeding, which leather belt contained a hole, and which exhibit was vital material evidence in the cause then being tried, and did, then and there, knowingly and contemptuously force the end of a wooden tapered dowel through

the hole in said belt in such manner as to increase the size of the hole and thereby to damage the probative value of said exhibit." The complaint then goes on to state: "That the acts herein set forth constitute unprofessional conduct by the respondent as a member of the Nebraska State Bar; constitute a violation of his oath of office as an attorney; constitute a violation of Section 7-105 R. R. S. of Nebraska, 1943, which makes it the duty of an attorney to employ, for the purpose of maintaining the cause confided to him, such means only as are consistent with the truth; constitute a violation of Section 7-106, R. R. S. of Nebraska, 1943, relating to an attorney who is guilty of deceit with intent to deceive a court; constitute a violation of Section 28-737 R. R. S. of Nebraska, 1943, relating to the offense of corruptly endeavoring to obstruct or impede the due administration of justice; constitute a violation of Section 28-711, R. R. S. of Nebraska, 1943, relating to the altering of any record pertaining to any court; constitute a violation of Canon 15, Canon 22, and Canon 32 of the Canons of Professional Ethics of the American Bar Association as approved by the Nebraska Supreme Court."

Respondent filed an answer to the complaint. We thereupon appointed a referee to take testimony and make a report to this Court. The referee had a hearing, took testimony, and made a report. Therein he set forth his findings of fact and recommendations as to the discipline he thought should be imposed. This was proper procedure for the referee to follow for Rule 7 of our Rules of Disciplinary Proceedings provides, in part, that: "The referee shall make a written report stating his findings of fact and recommendations."

Exceptions were taken by respondent to both the referee's findings of fact and recommendations as to discipline while the relator took exception only to the latter. Since the duty rests on this Court to maintain the integrity of the legal profession by disciplining

lawyers who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate fraud on the courts, or to corrupt and defeat the administration of justice, we necessarily review the evidence adduced in such proceedings de novo to determine if discipline should be imposed and, if it should, the extent thereof. In our discretion we may adopt the findings and recommendations of the referee if the evidence adduced, based on the principles applicable thereto, so justifies. See, State ex rel. Nebraska State Bar Assn. v. Gudmundsen, 145 Neb. 324, 16 N. W. 2d 474; State ex rel. Nebraska State Bar Assn. v. Richards, 165 Neb. 80, 84 N. W. 2d 136; In re Veach, 365 Mo. 776, 287 S. W. 2d 753.

In view of respondent's contentions we think it necessary to set forth certain principles which are applicable in disciplinary proceedings.

Disbarment proceedings are essentially civil and not criminal in character and the recognized rules governing civil practice are applicable thereto. However, in such proceedings the presumption of innocence applies and the charge made against an attorney must be established by a clear preponderance of the evidence. That is, the court should be satisfied to a reasonable certainty that the charges are true. See, Part III, Rule 1, Disciplinary Proceedings of the Revised Rules of the Supreme Court; State ex rel. Nebraska State Bar Assn. v. Price, 144 Neb. 542, 13 N. W. 2d 714; State ex rel. Nebraska State Bar Assn. v. Gudmundsen, supra; State ex rel. Nebraska State Bar Assn. v. Richards, supra.

A complaint against an attorney should set forth the grounds upon which discipline is sought with reasonable definiteness, that is, with sufficient definiteness so the Court may be advised of the matters complained of and the attorney fully informed of the matters with which he is charged so as to enable him to prepare and present his defense thereto. See, Part III, Rule 3, Disciplinary Proceedings of the Revised Rules of the Su-

preme Court; Braverman v. Bar Assn. of Baltimore City, 209 Md. 328, 121 A. 2d 473, certiorari denied, 352 U. S. 830, 77 S. Ct. 44, 1 L. Ed. 2d 51; 5 Am. Jur., Attorneys at Law, § 291, p. 437; 7 C. J. S., Attorney and Client, § 31a, p. 776. If the charges made against an attorney constitute a crime the fact that he has neither been charged therewith nor convicted thereof is immaterial in a disciplinary proceeding. See State ex rel. Nebraska State Bar Assn. v. Butterfield, 169 Neb. 119, 98 N. W. 2d 714.

In a disciplinary proceeding only those matters which are specifically charged in the complaint can be considered. See, Article XI, section 7, of the Rules Creating, Controlling and Regulating Nebraska State Bar Association; State ex rel. Nebraska State Bar Assn. v. Price, *supra*.

Respondent was admitted to practice law in this state on June 4, 1927. Immediately following his admission he began the practice of his chosen profession at Chadron, Dawes County, Nebraska, and has been practicing there ever since. He is presently a member of the Nebraska State Bar Association and licensed to practice law anywhere in the state.

We have often said: "In granting a license to practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts." State ex rel. Attorney General v. Burr, 19 Neb. 593, 28 N. W. 261. See, also, State v. Fisher, 103 Neb. 736, 174 N. W. 320; State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583; State ex rel. Nebraska State Bar Assn. v. Richards, *supra*.

"An attorney, as an officer of this court, must so conduct himself as to assist in maintaining confidence in the integrity and impartiality of the court." State ex rel. Sorensen v. Goldman, 127 Neb. 340, 255 N. W.

32. See, also, State ex rel. Nebraska State Bar Assn. v. Wiebusch, *supra;* State ex rel. Nebraska State Bar Assn. v. Richards, *supra.*

"Section 7-104, R. R. S. 1943, provides the oath every person must take and subscribe upon being admitted to practice by this court. In State ex rel. Nebraska State Bar Assn. v. Wiebusch, *supra,* we said: 'Such an oath requires lawyers to faithfully discharge their duties, uphold and obey the Constitution and laws of this state, observe established standards and codes of professional ethics and honor, maintain the respect due to courts of justice, and abstain from all offensive practices which cast reproach on the courts and the bar.'" State ex rel. Nebraska State Bar Assn. v. Richards, *supra.*

The act with which respondent is here charged occurred while he, in association with William C. Heelan, now deceased, was acting as counsel for Loyd Carroll Grandsinger in the district court for Cherry County. Grandsinger had been charged therein with the murder of Marvin Hansen, a member of the Nebraska Safety Patrol. Respondent, in association with Heelan, was helping conduct his defense. The charge was being prosecuted by William B. Quigley, County Attorney of Cherry County, assisted by Rush C. Clarke, who had been appointed for that purpose by the court. See Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632. During the course of the trial, which lasted from June 4 through 16, 1954, a Sam Browne belt and a pants belt worn by Marvin Hansen at the time he was killed were introduced in evidence. Both belts contained holes in them. There was evidence to the effect that these holes had been caused by a .22 caliber bullet passing through them. That fact, if true, was very material to the State's case. In fact, as to the pants belt, the judge admonished the jury to "Just examine the hole and do not probe it with anything." In connection with the Sam Browne belt, Lieutenant Wayne Byler of the Nebraska Safety Patrol was asked to take a dowel and make a

test thereon. Respondent objected to his doing so on the basis that it would alter the exhibit. Before the court ruled on this objection Byler was asked: "Can that (the test) be done without altering the exhibit?" He replied thereto: "No, I am afraid not." He was then asked: "In what way would it alter it?" He replied: "I think it would make the hole larger." The court thereupon sustained respondent's objection. It thus becomes evident that respondent was aware of the importance and materiality of the holes in these exhibits and the effect that probing them with a dowel would have.

Both the State and defense rested their case in the murder trial on Monday, June 14, 1954. Thereupon, a recess was taken until 9 a.m., Tuesday, June 15, 1954. The incident complained of happened shortly before 9 a.m., on Tuesday in the district courtroom, but before court had reconvened. There were present in the courtroom at that time, insofar as here material, the official court reporter, the county attorney, and respondent. The jury had not been called and was not present although there were others in the courtroom. The trial judge, Clarke, and Heelan were in the judge's chambers, which is adjacent to and just to the west of the south part of the west wall of the courtroom. The official court reporter had removed the exhibits from the judge's chambers onto his desk. While the reporter and the county attorney were moving them from that desk to a table in front of the jury box respondent was standing at the northeast corner of the reporter's desk. The evidence shows that respondent, while standing there, picked up the pants belt and a wooden dowel, exhibits in the case, from the reporter's desk and intentionally inserted the dowel in the bullet hole in the belt, twisting it while doing so. The county attorney caught respondent in the act.

The county attorney testified he turned very suddenly to catch respondent in the act of forcibly inserting

the dowel into the bullet hole in the pants belt; that he observed the respondent's face at the time and it was set with a determined expression; and that he grabbed respondent by the left arm and immediately took him into the judge's chambers where he admitted to the trial judge what he had done.

Clarke, who was in the judge's chambers at the time with the trial judge and Heelan, testified that the county attorney entered the judge's chambers with respondent, whom he was holding by the left arm; that respondent was holding a belt, one of the exhibits in the murder case, in his left hand and wooden dowel in his right; and that the dowel was still inserted in the bullet hole in the belt.

Sometime later that morning court reconvened and the record shows the following took place in the presence of the jury:

"BY MR. CLARKE:

Before we proceed with the arguments, Your Honor, there is a matter that has been taken up with, Your Honor, which we wish to get into the record.

THE COURT: Very well.

MR. CLARKE: We wish the record to show that counsel for the defendant, is willing that it shall show, that this mrongin (morning) in this court room, after the court reporter had brought all the exhibits in the case out and laid them on the reporter's desk, Mr. Fisher, one of counsel for the defendant, while he was examining Exhibit No. 10, being the leather pants belt heretofore identified as the belt of Marvin Hansen, and that at that time he took a dowel, being one of the wooden dowels on the reporter's desk, and being either the same or one exactly like the one I am holding in my hand, which I will have to have marked as an exhibit, and pushed it violently—

MR. FISHER: (Interrupting) I didn't violently push it—

MR. CLARKE: (Interrupting) pushed it through the hole in the belt hard enough so that it materially en-

larged the size of the hole to an extent which cannot now be determined and that the belt, Exhibit No. 10, is not now in the same condition as it was when it was offered in evidence and received in evidence, and that the hole is now materially larger than it was before Mr. Fisher did that.

\* \* \*

THE COURT: Mr. Fisher, as I understand it you have told counsel that you did that?

MR. FISHER: Yes.

THE COURT: You recognize that the hole is larger?

MR. FISHER: Yes."

Section 7-105, R. R. S. 1943, provides in part as follows: "It is the duty of an attorney and counselor: (1) To maintain the respect due to the courts of justice and to judicial officers; \* \* \* (3) to employ, for the purpose of maintaining the cause confided to him, such means only as are consistent with the truth; \* \* \* (5) to abstain from all offensive practices \* \* \*."

Section 7-106, R. R. S. 1943, provides in part as follows: "An attorney and counselor who is guilty of deceit or collusion, \* \* \* with intent to deceive a court, or judge, \* \* \* is liable to be disbarred, \* \* \*."

"The ethical standards relating to the practice of the law in this state are the canons of Professional Ethics of the American Bar Association and those which may, from time to time, be approved by the Supreme Court." State ex rel. Nebraska State Bar Assn. v. Richards, *supra*. See, also, Article X of the Rules Creating, Controlling and Regulating Nebraska State Bar Association; State ex rel. Nebraska State Bar Assn. v. Fitzgerald, 165 Neb. 212, 85 N. W. 2d 323.

Canon 15 provides in part: "The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane."

Canon 22 provides in part: "The conduct of the

lawyer before the Court and with other lawyers should be characterized by candor and fairness."

Canon 32 provides in part: "He must also observe * * * the statute law, * * *."

"Violation of a code of ethics or any conduct on the part of an attorney in his professional capacity which tends to bring reproach on the legal profession constitutes ground for suspension or disbarment." State ex rel. Nebraska State Bar Assn. v. Richards, *supra*.

Respondent seeks to explain and justify what he did by testifying as follows: "A. I was trying to probe it to see if there was any possible thing in the hole. I may explain that the slug had never been found—this .22 slug." When asked: "And you at that time thought the slug might have still been in the belt?" He replied: "I thought if it was their theory was blown clear out of the building."

Considering the thickness of the pants belt involved and the size of the bullet of a .22 caliber short, let alone that of a .22 caliber long rifle cartridge which was the type of ammunition used, this explanation is neither realistic nor plausible.

Respondent calls our attention to the condition of the hole in the belt now, over 5 years later, to show what he did did not materially alter or change the condition of the hole in the pants belt and offered evidence to the effect. Assuming that is true it is no excuse for what respondent did or attempted to do. The mere fact that he was caught before he completed what he set out to do is no excuse.

Respondent has offered a large number of affidavits by persons who have known him for many years. These are generally to the effect that he has always had a good reputation in Chadron and the surrounding territory both as a lawyer and as a citizen. We said in State ex rel. Nebraska State Bar Assn. v. Butterfield, *supra:* "Whether or not the reputation of an attorney is of material importance in any discipline case must neces-

sarily depend largely upon the facts and circumstances thereof." As we said in State ex rel. Nebraska State Bar Assn. v. Richards, *supra:* "* * * we think this evidence of his reputation and integrity as a lawyer in a community where he has practiced law for many years should be given consideration in determining the extent of discipline that should be imposed." See, also, State ex rel. Nebraska State Bar Assn. v. Gudmundsen, *supra.*

Respondent had been actively engaged in the practice of law for 27 years when the incident occurred of which we here find him guilty. He had a large practice and should have been and was fully aware of the Canons of Professional Ethics which controlled his conduct while so engaged. In view of the facts herein set forth, and all the circumstances disclosed by the record relating thereto, we find the ends of justice will be properly served by suspending respondent from the further practice of law, the same to go into effect 30 days after our judgment rendered herein becomes effective. If, at the end of 1 year from the effective date of his suspension, respondent makes an affirmative showing sufficient to satisfy this Court that he has fully complied with our order of suspension and that he will not, in the future, engage in any practices offensive to the legal profession then he will be reinstated and allowed to engage in the practice of law. However, if he fails to do so within a reasonable time thereafter then the suspension herein provided for shall become permanent.

Judgment of suspension accordingly. All costs of this proceeding are taxed to the respondent.

JUDGMENT OF SUSPENSION.