STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. PAUL E. RHODES, RESPONDENT.
131 N. W. 2d 118

Filed October 23, 1964.   No. 35399.

Clarence A. H. Meyer, Attorney General, and Peter E. Marchetti, for relator.

Paul E. Rhodes, pro se.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an original disciplinary proceeding initiated in conformity with the rules of this court, against the respondent Paul E. Rhodes, a lawyer duly admitted and licensed in 1943 to practice his profession in this state. The proceeding was filed in the name of the State of Nebraska ex rel. Nebraska State Bar Association as relator. The parties will hereinafter be referred to as relator and respondent.

The matter was referred for hearing, report, and recommendation to Elbert H. Smith as referee, and is before this court on his report finding the respondent guilty of unprofessional conduct, and the respondent's exceptions thereto.

The duty rests on this court to maintain the integrity of the legal profession by disciplining lawyers who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate fraud on the courts, or to corrupt or defeat the administration of justice. We therefore review the evidence adduced in this proceeding de novo to determine if discipline should be imposed, and, if it should, the extent thereof. See State

ex rel. Nebraska State Bar Assn. v. Fisher, 170 Neb. 483, 103 N. W. 2d 325.

After the briefs were filed herein, and shortly before the oral argument, respondent filed a motion to disqualify all of the members of this court from participating herein because the Associate Justices had been defendants in Rhodes v. Houston, 202 F. Supp. 624, an action filed by him in the federal district court, and because the Chief Justice, while a district judge, had ruled against the respondent on a petition for habeas corpus, and for the further reason that they are members of the Nebraska State Bar Association. This motion will be discussed hereafter.

The complaint herein embraced five counts, but by amendment Count IV was withdrawn. The remaining four will be summarized in as abbreviated a form as possible to an understanding of the complaint herein.

Count I generally charges the respondent with having been charged with contempt in the district court for Morrill County, Nebraska, on July 29, 1960, because while a defendant in a criminal case he intentionally attempted to obstruct and hinder the administration of justice and to intimidate the judge of the district court by conspiring with and procuring the county judge of Morrill County to issue a bench warrant and a complaint for the arrest of the district judge in an attempt to bring about his incarceration for the purpose of preventing him from performing his official duties. The count then alleges that after trial, respondent was found guilty of contempt, and that said judgment has become final. It also alleges that said unprofessional conduct was a violation of subdivisions (1), (5), and (6) of section 7-105, R. R. S. 1943. It further alleges that said act was in violation of the obligations implicit in the lawyer's oath provided for by section 7-104, R. R. S. 1943; and further, that all of the said acts were a violation of Canons 1, 22, 29, and 32 of the Canons of Professional Ethics of the American Bar Association, which

are the ethical standards governing Nebraska lawyers in the practice of their profession.

Count II substantially alleges that for the same purposes mentioned in Count I, respondent obtained from the county judge of Morrill County bench warrants and complaints for the arrest of Rush C. Clarke, special assistant attorney general of the State of Nebraska, James L. Macken, county attorney of Morrill County, and Norval E. Houston, sheriff of Morrill County, and personally delivered said warrants to the county clerk with instructions to execute said warrants by incarcerating the individuals named; and that said acts constituted unprofessional conduct, in violation of the provisions of section 7-105, R. R. S. 1943.

Count III substantially alleges that respondent, in pursuance of a calculated and contumacious disregard for the authority, integrity, and dignity of the courts of this state, filed an action against the trial judge in the criminal contempt action, the Attorney General, the assistant attorney general, the county attorney, the sheriff of Morrill County, and others, attempting to obtain a permanent injunction against the confinement of a witness being held in the county jail for willful refusal to answer questions propounded to him in the contempt action. Said count further alleges that said respondent, knowing the district judge planned to be in Morrill County, filed an affidavit that said judge was absent from the county, and, by threats and intimidation, induced the acting county judge to sign an order restraining the district judge from keeping the witness in the county jail. That thereafter, by threats and intimidation, respondent induced the clerk of the district court to issue a certified copy of the restraining order drafted by the respondent for service on the trial judge. That thereafter, respondent filed an affidavit and a motion for disqualification of said trial judge, alleging the pendency of an action involving a pecuniary and monetary difference between the trial judge and the

respondent in the action in which the alleged contempt occurred.

Count V alleges three specific instances in which respondent, by personal acts, conduct, and attitude, repeatedly exhibited a pronounced disrespect for the courts of Nebraska, to wit: a. On January 11, 1960, while being arraigned on a criminal complaint, respondent assumed a full-length, reclining position on a spectator's bench in the courtroom, and advised the district judge it would be necessary for the court to have the sheriff drag him before the bench if the court wanted him there; b. that in the early morning hours of the day after district judge R. M. Van Steenberg retired from the district bench, respondent called him by long distance, addressed him as an "Old Kangaroo" and subjected him to a tirade of abuse; and, c. that on September 7, 1962, and at various other times, respondent has referred to the courts of Nebraska as "Kangaroo Courts."

Respondent filed a lengthy, repetitious answer and a supplemental amendment to his answer, which we summarize as briefly as possible. As to Count I, the answer alleges lack of jurisdiction. It contains a general denial of all of the allegations of the complaint, and specifically denies violations of the Canons of Professional Ethical Standards or the statutes of Nebraska. It alleges that the judgment in the contempt action is absolutely void, and, quoting from respondent's answer, "to base a complaint against respondent based on such a void judgment Kangaroo Court, is a violation fo (of) due process and equal protection of law to this respondent, * * *." It alleges that the contempt judgment is void as a violation of constitutional provisions, "trial in absentia," and the calling of a witness without notice to respondent, and the pronouncing of sentence of imprisonment for 9 months in the Nebraska State Penitentiary at hard labor; and for the further reason that the respondent was subpoenaed as a witness and forced to testify against himself. It alleges that the charges and the complaint

are aiding and abetting in the deprivation of respondent's federal civil rights; and alleges that the advisory committee of the Nebraska State Bar Association has violated the rules of the Supreme Court. It further alleges that the district court for Morrill County determined that the county court had jurisdiction in the habeas corpus action out of which the case at bar grows; alleges that it is customary procedure for attorneys to prepare orders and papers for signature by the judge; and finally, alleges that a court of competent jurisdiction has adjudged the judgment embraced in the complaint to be void.

As to Count II, the answer contains a general denial, and alleges that all acts done by the respondent were done with the aid, assistance, and on the advice of a duly-licensed attorney of the State of Nebraska; and further alleges that Rush C. Clarke, special assistant attorney general of the State of Nebraska, James L. Macken, county attorney, and Norval E. Houston, sheriff of Morrill County, had complaints against themselves dismissed at a time they had the county court of Morrill County under a writ of prohibition from the district court, "their Kangaroo Judge, R. M. Van Steenberg, entering the order, * * *"; and alleges violation of the Fourteenth Amendment to the Constitution of the United States.

As to Count III, respondent denies generally and for further answer alleges "that Rush Clark, special assistant Attorney General, Kangaroo Judge R. M. Van Steenberg in a case in which he was disqualified to act as judge because of common law Bias passion and Prejudice and James L. Macken County Attorney of Morrill County, Nebraska, had caused the County Judge of Morrill County, Nebraska to be imprisoned in the County Jail of Morrill County, Nebraska, for his efforts to protect the County Court of Morrill County, Nebraska, and the judge thereof from the Kangaroo action of the Last above named parties, * * *"; and alleges that said

actions and parties interfered with the due administration of justice in Morrill County, Nebraska.

As to Count V, respondent denies generally and alleges that said count refers to the contempt action which is still pending, that respondent is a party to said action, and that there is no power or authority to proceed in a disciplinary action.

Further answering to Counts I, II, III, and V, respondent alleges that R. M. Van Steenberg was disqualified to act in all of the cases alleged in the amended complaint, and that Albert W. Crites was an imported "Kangaroo judge," imported by the State of Nebraska through its agents, representatives, James L. Macken, Rush Clarke, C. S. Beck, and R. M. Van Steenberg, "to Kangaroo this respondent, and prevent this respondent from having a fair trial, * * *."

The supplemental amendment to the answer of the respondent is in the nature of a confession and avoidance and alleges substantially that if respondent is guilty of any of the alleged offenses, he should not be disciplined because all of the said facts and circumstances were brought about by the violation of his state and federal constitutional rights and civil rights, "and was deliberately done by the relator and relator members of the Nebraska State Bar Association to entrap this respondent * * *." Respondent then sets out nine alleged violations of his rights, which he alleges constitute sufficient harassment and entrapment to be a complete defense.

Section 7-105, R. R. S. 1943, provides as follows: "It is the duty of an attorney and counselor: (1) To maintain the respect due to the courts of justice and to judicial officers; (2) to counsel or maintain no other actions, proceedings or defenses than those which appear to him legal and just, except the defense of a person charged with a public offense; (3) to employ, for the purpose of maintaining the cause confided to him, such means only as are consistent with the truth; (4) to

maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets of his clients; (5) to abstain from all offensive practices and to advise no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged; (6) not to encourage the commencement or continuance of an action or proceeding from any motive of passion or interest."

Section 7-104, R. R. S. 1943, provides as follows: "Every attorney upon being admitted to practice in the Supreme Court or district courts of this state, shall take and subscribe an oath substantially in the following form: 'You do solemnly swear that you will support the Constitution of the United States, and the Constitution of this state, and that you will faithfully discharge the duties of an attorney and counselor, according to the best of your ability.' "

In State ex rel. Nebraska State Bar Assn. v. Palmer, 160 Neb. 786, 71 N. W. 2d 491, we held that this oath requires a lawyer to faithfully discharge his duties; uphold and obey the Constitution and laws of this state; observe established standards and codes of professional ethics and honor; maintain the respect due to courts of justice; and abstain from all offensive practices which cast reproach on the courts and the bar.

The ethical standards relating to the practice of law in this state are the Canons of Professional Ethics of the American Bar Association, and those which may from time to time be approved by the Supreme Court. State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583.

The Canons of Professional Ethics which the respondent has been charged with violating, so far as material here, read as follows: "1. It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend them-

selves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected. * * *

"22. The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness.

"It is not candid or fair for the lawyer knowingly to misquote the contents of a paper, the testimony of a witness, the language or the argument of opposing counsel, or the language of a decision or a textbook; or with knowledge of its invalidity, to cite as authority a decision that has been overruled, or a statute that has been repealed; or in argument to assert as a fact that which has not been proved, * * *. * * *

"These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice. * * *

"29. * * * He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice. * * *

"32. No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public. When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. * * *."

We first consider respondent's motion to disqualify all of the members of this court. We assume it is premised on the assumption that they are interested in the outcome of this disciplinary proceeding because they were joined in alleged civil rights actions in the federal district court, in which actions they were held to be immune to suits for any acts done in the performance of the duties of their office. It is of interest to note that respondent, previous to his arraignment in the district court for Morrill County on the original criminal complaint, and again previous to his trial for contempt, attempted to disqualify the two district judges involved in the same manner. If the respondent, by the mere expedient of filing an action against any judge before whom he must appear, could disqualify the judge, our judicial system would soon become a hollow mockery. The joinder of the members of this court in the actions filed is not in any way involved in the proceedings herein.

With specific reference to the fact that all of the members of the court are members of the Nebraska State Bar Association, that is also true of any attorney practicing before the courts in this state as well as of the district judges who would need to be called to hear his case if the members of this court were disqualified. There is no merit to respondent's position, but even if there were, by the great weight of authority, the rule of necessity would be applicable. See Annotation, 39 A. L. R. 1476.

We have stated many times that while a disciplinary proceeding is not criminal in nature, in view of the momentous consequences to the person charged, the presumption of innocence applies, and his culpability must be established by a clear preponderance of the evidence. See State ex rel. Nebraska State Bar Assn. v. Pinkett, 157 Neb. 509, 60 N. W. 2d 641. That is, the court must be satisfied to a reasonable certainty that the charges are true. State ex rel. Nebraska State Bar Assn. v. Jensen,

171 Neb. 1, 105 N. W. 2d 459. A license to practice law in this jurisdiction is granted on the implied understanding that the party receiving it shall at all times demean himself in a proper manner and abstain from such practices as cannot fail to bring discredit on himself, the profession, and the courts. See State ex rel. Sorensen v. Scoville, 123 Neb. 457, 243 N. W. 269.

The purpose of a disbarment proceeding is not so much to punish an attorney as it is to determine, in the public interest, whether he should be permitted to continue to practice law. State ex rel. Nebraska State Bar Assn. v. Wiebush, 153 Neb. 583, 45 N. W. 2d 583.

Violation of any of the ethical standards relating to the practice of law, or any conduct of an attorney in his professional capacity which tends to bring reproach on the courts or the legal profession, constitute grounds for suspension or disbarment. See State ex rel. Nebraska State Bar Assn. v. Richards, 165 Neb. 80, 84 N. W. 2d 136.

Respondent strenuously contends that an unreported judgment rendered in Rhodes v. Edmondson, T-3405, a case in the United States District Court for Kansas, found the contempt judgment to be void, and is controlling herein. A certified copy of the instructions to the jury in that case was offered in the hearing before the referee, and said instructions are included in the respondent's brief herein. They disclose that the action was one against Harry W. Edmondson, a penitentiary guard, who permitted a default judgment to be entered against him. Without speculating on the questions which immediately arise, it is sufficient to observe that this judgment could not possibly have any effect herein. While we cannot consider it in this matter, it is of interest to note the observation of Judge Delehant at page 111 in Rhodes v. Meyer, 225 F. Supp. 80, on the relationship between respondent and Edmondson.

Essentially, respondent's exceptions to the report of the referee are based on his contention that his con-

viction of contempt of court is void because his constitutional rights were violated, particularly by what he terms his "trial in absentia." In this proceeding, we concern ourselves not so much with the conviction as such, but rather with the conduct of the respondent which culminated in his conviction of contempt of court. Respondent does not attempt to seriously challenge the testimony adduced on this phase. However, we note that respondent's position as to the alleged invalidity of the judgment has been the basis of many civil actions brought against every official even remotely connected with the proceedings. These cases effectively demonstrate the lack of any merit in respondent's contention. We refer specifically to Rhodes v. Houston, 202 F. Supp. 624, affirmed 309 F. 2d 959, certiorari denied 372 U. S. 909, 83 S. Ct. 724, 9 L. Ed. 2d 719; Rhodes v. Meyer, 225 F. Supp. 80, affirmed 334 F. 2d 709; Rhodes v. Van Steenberg, 225 F. Supp. 113, affirmed 334 F. 2d 709. These cases thoroughly detail the extensive history of the litigation and respondent's allegations. No useful purpose will be served herein by further elaboration.

Judge Van Oosterhout, in Rhodes v. Meyer, *supra,* and Rhodes v. Van Steenberg, *supra,* at page 713 of 334 F. 2d 709, summarizes and clearly and briefly categorizes the respondent's allegations in the following language: "The cases we are here considering and Houston allege similar conspiracies under the same Civil Rights Act. These conspiracies allegedly generated from the same source—a trial in state court for contempt of court in which the plaintiff herein was the defendant. The core of plaintiff's alleged wrongful treatment or handling by the various officials named as defendants in these cases stems from what plaintiff terms his trial in absentia. Indeed, were this an issue yet to be determined, we would certainly be inclined to drop the axe on this litigation less quickly; but the issue concerning the denial of the motion for continuance and the termination of the contempt trial without the presence of plaintiff was

thoroughly discussed by Judge Van Pelt in Houston and adequately and correctly determined by him to be no basis for a claim against these defendants, 202 F. Supp. 624, 630-633. This finding reams the core out of plaintiff's complaints."

The referee made detailed findings of fact of each of the allegations embraced in the four counts of the amended complaint as well as on each of the allegations and denials contained in respondent's answer. No purpose will be served by incorporating those findings herein, or by detailing the evidence, most of which is undisputed and which we determine clearly and with reasonable certainty establishes the finding of the referee. We therefore summarize those findings of the referee which we deem pertinent herein.

First: Respondent had been bound over to the district court for Morrill County on a criminal complaint charging arson. While his arraignment was still pending, respondent, in an attempt to prevent his arraignment, procured the issuance of a bench warrant for the arrest of the district judge in the county court of Morrill County for ignoring a void order of the county court and proceeding with respondent's arraignment. This is the activity which culminated in his conviction of contempt of court. We have previously indicated that there is no merit to respondent's contention that this conviction is void. We have also determined that this judgment of conviction became final.

Second: Respondent contends that his actions in obtaining a bench warrant from the county court of Morrill County for the arrest of the district judge were justified because of the violation by the district judge of a writ of habeas corpus issued by the county court. We specifically found that writ of habeas corpus to be void in McFarland v. State, 172 Neb. 251, 109 N. W. 2d 397. In that case we said: "When a judge collaborates with one charged with crime to secure his release by the issuance of a void writ of habeas corpus and thereafter cites

the judge of the court having jurisdiction of the criminal proceeding for criminal contempt for disregarding the void writ, such judge, under proper evidence, may be punished for criminal contempt." We find respondent's actions to be a violation of subdivisions (1), (5), and (6) of section 7-105, R. R. S. 1943; of his oath as an attorney; and of Canons 1, 22, 29, and 32 of the Canons of Professional Ethics of the American Bar Association which are in full force and effect in this state.

Third: On January 11, 1960, when the respondent appeared for arraignment on the information charging arson, he saw fit to lay stretched out on a spectator's bench in the courtroom and to inform the court, "If you want to have me up there, you'll have to have the Sheriff bring me up there, your honor." The referee suggests that the fact that respondent had obtained a void writ of habeas corpus may have contributed to his frame of mind. Our observation is that regardless of respondent's frame of mind, such conduct in a courtroom is a flagrant and reprehensible violation of his oath as a lawyer, subdivisions (1) and (5) of section 7-105, R. R. S. 1943, and Canon 1 of the Canons of Professional Ethics of the American Bar Association, in full force and effect in this state.

Fourth: On September 6, 1960, the day the contempt trial was scheduled to begin, the respondent, with the intent to obstruct the orderly processes of the district court for Morrill County and to harass and embarrass the prosecuting attorneys and the sheriff who had taken him into custody, procured and had served warrants for the arrest of the special assistant attorney general, the county attorney, and the sheriff of Morrill County. These warrants were quashed and the trial was commenced. There can be no question respondent's conduct was intended to impede and obstruct the administration of justice. It is even more reprehensible, if such is possible, when we consider that he was his own client. We find this conduct to be a violation of Canons 15 and 16,

set out hereafter, and of Canon 29, set out heretofore, as well as subdivisions (1), (5), and (6) of section 7-105, R. R. S. 1943.

Fifth: On September 8, 1960, during the trial for contempt, respondent, in a calculated and contumacious disregard for the authority, integrity, and dignity of the district court for Morrill County, obtained a temporary restraining order from the acting county judge against the district judge presiding at the contempt hearing. The restraining order purported to restrain the district judge from confining the county judge, Robert D. Mc-Farland, in the county jail for contempt of court for his refusal to answer questions propounded to him in the contempt hearing. The county judge was in jail on September 8, 1960. Respondent then filed an affidavit and motion for the disqualification of the judge to continue in his contempt hearing. We determine his conduct to be a violation of the same provisions referred to in the preceding paragraph.

Sixth: On November 15, 1960, the respondent was served with a notice of a hearing that the contempt trial, which had been adjourned, would be continued on November 21, 1960, and on that date filed a motion for a continuance but did not appear, to which finding of the referee we add that the evidence in the record is overwhelming that respondent had ample notice of the hearing and deliberately stayed away, probably in the mistaken belief that the trial could not be continued in his absence. Respondent's conduct in this instance well illustrates his utter disregard for his obligation as a member of the bar of this state.

Seventh: On January 6, 1961, the day after his term expired, respondent called the former district judge, Richard M. Van Steenberg, by telephone, and after identifying himself, said: "Is this the old Kangaroo himself," and proceeded to verbally abuse him. Respondent offered no evidence to refute this charge. While it is true Van Steenberg was no longer a district judge, the abuse

was directed toward his action as a judge and would certainly tend to bring discredit on the judiciary.

Eighth: On April 8, 1963, the respondent filed his answer herein, which answer in 12 separate instances refers to the district court for Morrill County as "Kangaroo Court" and the judges thereof as "Kangaroos." Webster's New International Dictionary (2d Ed.), p. 1352, defines "kangaroo court," as follows: "An irresponsible, unauthorized, or irregular tribunal, or one in which, although conducted under some authorization, the principles of law and justice are disregarded or perverted; * * *." It is obvious that the term is one of contempt and utter disrespect. There is no doubt that it was so intended by respondent. Its continued use at the hearing before the referee is conclusive proof of the intent of respondent.

The referee concluded that respondent believed the characterization of the courts assailed by him to be correct. This certainly could be no defense. A lawyer, of all people, should know the proper procedures if he feels aggrieved. He is entitled to the full protection of the law so long as he seeks his relief in accordance with those procedures. Canon 1, set out heretofore, outlines the procedure to be followed. Respondent's actions clearly violate subdivisions (1) and (5) of section 7-105, R. R. S. 1943, and Canons 1 and 16 of the Canons of Professional Ethics, in full force and effect in this state.

Ninth: The respondent, in the supplemental amendment to his answer, pleaded entrapment. The respondent introduced no evidence even remotely bordering on entrapment and the referee so found. To constitute entrapment, respondent would need to show that he had no intent to violate his obligations as an attorney and that the purpose to do so was instilled by his accusers. Even if this could be proved, it would do no more than demonstrate the unfitness of the respondent to continue in the practice of his profession.

In many of the instances charged, respondent was act-

ing as his own attorney. When so acting he is charged with the same responsibility as if acting as attorney for a client and as such must avoid the violation of the Canons of Professional Ethics governing that relationship. See State ex rel. Nebraska State Bar Assn. v. Palmer, 160 Neb. 786, 71 N. W. 2d 491. In this respect, we call attention to Canons 15 and 16 of the Canons of Professional Ethics, so far as material herein: "15. Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.

"The lawyer 'owes entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client.

"16. A lawyer should use his best efforts to restrain and to prevent his clients from doing those things which

the lawyer himself ought not to do, particularly with reference to their conduct towards Courts, judicial officers, jurors, witnesses and suitors. If a client persists in such wrong-doing the lawyer should terminate their relation."

These findings amply justify the conclusion that the respondent's conduct has been such that he has disqualified himself for continuance as a member of the bar of the State of Nebraska. This conclusion is further strengthened by a review of respondent's conduct at the hearing before the referee, which clearly indicates his lack of respect for the courts and for the proprieties of the legal profession. His conduct at the hearing, in and of itself, was sufficient to indicate that respondent is no longer qualified to continue as a member of the bar of this state.

His attempt to subpoena the former Chief Justice of this court with the statement that he would expect him to testify that at the time the opinion in Rhodes v. Sigler, 172 Neb. 439, 109 N. W. 2d 731, was written he was not aware of the record that was before the court and in the files, and that the opinion was written to protect the good name of the bar and of certain judges, without regard to the rights of the respondent, is but one of the many indications of respondent's irresponsible indulgences in practices designed to bring the courts of this state into disrepute.

For the reasons indicated above, we sustain the findings of the referee that respondent is guilty of unprofessional conduct. We find respondent's conduct clearly violates his oath as an attorney, as well as the specific provisions of subdivisions (1), (5), and (6) of section 7-105, R. R. S. 1943, and Canons 1, 22, 29, and 32, as well as Canons 15 and 16 of the Canons of Professional Ethics of the American Bar Association, which ethical standards are in full force and effect in Nebraska.

Respondent has been actively engaged in the practice of law in this state since 1943. In that time he could

not help but become fully aware of the ethical standards relating to the practice of law in this state. The aggravated nature of respondent's consistent and continued disrespect for and misconduct towards the courts of this state, and the extremes to which he saw fit to resort to avoid a legal hearing clearly and conclusively evidence his unfitness to continue as a member of the bar of this state.

We find that the respondent's conduct has been such that his license to practice the profession of law should be and hereby is revoked and he is disbarred from the further practice of the profession of law in the State of Nebraska.

JUDGMENT OF DISBARMENT.