STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, v. ELVEN A. BUTTERFIELD, RESPONDENT.

98 N. W. 2d 714

Filed October 23, 1959. No. 34597.

*Clarence S. Beck,* Attorney General, and *Gerald S. Vitamvas,* for relator.

*Chambers, Holland, Dudgeon & Hastings,* for respondent.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a disciplinary action against respondent, Elven A. Butterfield, an attorney at law, duly licensed and admitted to practice in this state and a member of the Nebraska State Bar Association. The complaint filed in this court by the Advisory Committee of the Nebraska State Bar Association as relator charged respondent with unprofessional conduct in the practice of law and conduct in violation of the Canons of Professional Ethics adopted by this court.

In that connection, the complaint charged in substance that on or about May 25, 1956, respondent, as a duly commissioned, qualified, and acting notary public, executed a certificate of acknowledgment to a certain warranty deed wherein he certified that Irene Marston, together with her husband, Richard B. Marston, appeared before respondent in person and acknowledged execution of the deed to which his certificate was attached, and that later in the trial of an action in the district court for Holt County, entitled Marston v. Drobny, respondent testified under oath that said Irene Marston had not appeared before him and had never

acknowledged said warranty deed, and that by reason of the foregoing facts respondent either: (1) Executed a false certificate of acknowledgment, or (2) testified falsely in the trial of said cause. The prayer of the complaint was that this court order such disciplinary action as it deems reasonable and proper.

The case in which respondent allegedly executed a false certificate of acknowledgment and testified falsely under oath with relation thereto was appealed to this court and the opinion therein is reported as Marston v. Drobny, 166 Neb. 747, 90 N. W. 2d 408.

In the case here involved, respondent was permitted to file an amended answer to relator's complaint. Therein he admitted that he was duly licensed and admitted to practice law in this state in 1927; denied that he testified falsely as alleged; and admitted that on May 25, 1956, he was a duly commissioned, qualified, and acting notary public and that on that date he certified on the warranty deed that Irene Marston appeared before him in person and acknowledged the execution of said deed. Respondent then alleged that circumstances leading up to and including acknowledgment of the deed by his cousin, Irene Marston, were such that he did not intentionally pursue a course of misconduct designed to defraud or injure anyone. He thereafter set forth alleged facts surrounding the transaction, the effect of which was to allege that: "* * * he believed that she had signed the deed of her own free will and act and that the entire transaction was being made with her consent, * * *."

Subsequently, a motion for judgment on the pleadings, filed on behalf of relator by the Attorney General, was overruled by this court and a referee was duly appointed. After notice duly given and by agreement of the parties, a hearing was held by the referee on August 3, 1959, whereat respondent and his counsel were present. At such hearing evidence was adduced by the parties, and the cause was submitted. Subse-

quently, on September 3, 1959, a comprehensive report of the referee was duly filed in this court. Such report summarized the pleadings; set forth the issues; recited that a hearing was held thereon as aforesaid; set forth by reference from the record and at length all the relevant and material evidence adduced at the hearing; cited and discussed applicable and controlling rules of law; made findings of fact and conclusions of law; found respondent guilty as hereinafter set forth; and recommended "* * * that such disciplinary action be taken against Respondent as the court shall deem advisable under all the circumstances."

Thereafter respondent filed no written exceptions to the referee's report within 10 days after filing thereof in this court or at any time thereafter. Thus, on September 15, 1959, the Attorney General filed a "Motion for Final Judgment" praying that this court "consider the findings of the referee final and conclusive"; and render judgment "against the respondent and impose such disciplinary action as the court deems just and proper." A copy of such motion and notice of hearing thereof were admittedly received by counsel for respondent on September 15, 1959, and, in conformity with such notice, said motion was orally argued and submitted to this court by counsel for the parties without any further showing or objections by counsel for respondent.

In that connection, Rule 8 of the Rules for Disciplinary Proceedings in this court provides: "8. Motion for Final Judgment; Exceptions to Report. Within 10 days after the filing of such report, either party may file written exceptions to such report. If no exceptions are filed, the court in its discretion may consider the findings final and conclusive, and on motion shall enter such order as the evidence and law require." Under the circumstances and proceedings as they appear in this case, and in the exercise of its discretion, this court considers the findings of the referee final and conclusive, and sustains relator's motion for final judgment.

The "Findings of Fact" made by the referee in his report, which were supported by more than a clear preponderance of the evidence theretofore set forth in such report, were as follows:

"A.   -*General*

"Respondent was admitted to practice law in Nebraska in 1927, and has been engaged in the active practice of his profession at Neligh, Nebraska since 1928.

"He appears to have numerous friends anxious to testify to an excellent general reputation.

"B.   -*Did He Execute a False Acknowledgment?*

"Giving the defendant the benefit of every doubt, and assuming that his testimony at this hearing is most beneficial to him, it appears that the Respondent prepared the deed; that he gave it to Mr. Marston; that Mr. Marston returned it to him; that in the interim Mrs. Marston had attached her signature; that such signature was not affixed in the presence of the Respondent; that the only time Respondent saw Mrs. Marston after he prepared the deed and before it was delivered was when he saw her in front of the land bank in O'Neill the day the deed was delivered; that the only conversation between Mrs. Marston and the Respondent at that time was that Mrs. Marston asked if he would need her any more, that he said he would not if all the papers were signed, and that she replied that they were all signed; that she knew she had signed the deed and that the parties were there at that time to complete a sale of the Marston farm; that the Respondent assumed such conversation to constitute an acknowledgment by Mrs. Marston that she had signed such deed as her free and voluntary act.

"The Respondent executed the acknowledgment and attached his notarial seal sometime on or before June 7, 1956, but intentionally caused the date of both the deed and the acknowledgment to be shown as January 2, 1957.

"C.   -*Did He Testify Falsely in the Case of Marston v. Drobney?*

"In the Drobney case Respondent testified he never saw Mrs. Marston in O'Neill or had any conversation with her, until *after* the deed had been delivered in the land bank, and that she had never acknowledged it to him at any time. The testimony of the Respondent was similar to the testimony of Irene Marston, one of the plaintiffs in the case. The Respondent was at all times during that trial, one of the attorneys of record for the plaintiffs, although his testimony resulted from being called as a witness by the defendants, and cross-examined for the plaintiffs."

The "Conclusions of Law" made by the referee in his report were as follows:

"1. The Supreme Court has jurisdiction of the person of the Respondent and of the subject matter of the proceeding.

"2. The conversation between Mrs. Marston and the Respondent, with her knowledge that she had signed the deed and that settlement was to be made at that time, and without in any way protesting to the Respondent, was sufficient to constitute a valid acknowledgment. The procedure and lack of formalities were definitely irregular, but it cannot be said that such irregularities would justify finding the acknowledgment false for this reason, and in this respect I find for the Respondent.

"3. The execution by the Respondent of the acknowledgment on or before June 7, 1956, and showing the date thereof to have been Jan. 2, 1957, was false, and in this respect I find for the Relator.

"4. Since the events as related at this hearing by the Respondent and his principal corroborating witness, Mrs. Marston, and which now coincide very closely in the more important details with the testimony of Marvin and Otto Drobney given in the original trial in District Court, show that the Respondent and Mrs. Marston did see each other and did have a conversation relative to the deed and other papers sufficient to justify the

Respondent to execute an acknowledgment prior to the deed being deposited in the bank, the conclusion is inescapable that when Respondent testified in the Drobney case in response to a question as to whether Mr. and Mrs. Marston were there and he replied that Mr. Marston and the Drobney boys were then and when he said that she had never at any time acknowledged that deed, he gave false testimony. Respondent's entire testimony was corroborative of that of the plaintiff, Mrs. Marston, with a very obvious lack of effort to offer any explanations or clarifications at that time that would in any way justify a finding that the acknowledgment was valid in that action. Had Respondent given the same testimony in the Drobney case as he gave at this hearing relative to the acknowledgment of the deed, this action would probably never have been instituted. I regret to find that any lawyer may have given false testimony, but I must find for the Relator on this issue."

We turn then to section 76-218, R. R. S. 1943, which provides in part: "Every officer within this state authorized to take the acknowledgment or proof of any conveyance, * * * who shall be guilty of knowingly stating an untruth, * * * in relation to the taking or the certifying of the proof or acknowledgment, * * * of any such conveyance, * * * shall upon conviction be adjudged guilty of a misdemeanor, and be subject to punishment by fine not exceeding five hundred dollars, and imprisonment not exceeding one year, and shall also be liable in damages to the party injured."

As stated in Annotation, 9 A. L. R. 196, citing numerous authorities: "The making of a false jurat or acknowledgment by an attorney, while acting as a notary public or commissioner of deeds, is a moral delinquency, justifying his suspension or disbarment." See, also, Annotation, 43 A. L. R. 108; 5 Am. Jur., Attorneys at Law, § 278, p. 428, and authorities cited therein.

On the other hand, in Annotation, 9 A. L. R. 200, numerous authorities are cited and discussed which con-

clude that the giving of false testimony by an attorney at law while under oath is an act involving moral turpitude which justifies suspension or disbarment in a disciplinary proceeding regardless of the fact that he had not been theretofore convicted of the crime of perjury. See, also, Annotation, 43 A. L. R. 110; Annotation, 55 A. L. R. 1375; In re Disbarment of Hertz, 169 Minn. 431, 211 N. W. 678.

In that connection, also, section 7-105, R. R. S. 1943, provides in part: "It is the duty of an attorney and counselor: (1) To maintain the respect due to the courts of justice and to judicial officers; * * * (3) to employ, for the purpose of maintaining the cause confided to him, such means only as are consistent with the truth; * * * (5) to abstain from all offensive practices * * *." In that connection also, section 28-701, R. R. S. 1943, provides in part: "Whoever, having taken oath or made affirmation in any judicial proceeding, * * * or in any other matter where, by law, an oath or affirmation is required, shall, upon such oath or affirmation willfully and corruptly depose, affirm or declare any matter to be fact, knowing the same to be false, or shall in like manner deny any matter to be fact, knowing same to be true, shall be deemed guilty of perjury, and shall be fined in any sum not less than one hundred dollars nor more than one thousand dollars, or imprisoned in the penitentiary not more than fourteen years and not less than one year."

This court has repeatedly stated and affirmed or re-affirmed the rules of law which are applicable and controlling in disciplinary cases comparable in all material respects with that at bar. Such rules will not be repeated here. We deem it sufficient to cite State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583; State ex rel. Nebraska State Bar Assn. v. Richards, 165 Neb. 80, 84 N. W. 2d 136; State ex rel. Nebraska State Bar Assn. v. Fitzgerald, 165 Neb. 212, 85 N. W. 2d 323; and State ex rel. Nebraska State Bar

Assn. v. Stanosheck, 167 Neb. 192, 92 N. W. 2d 194, wherein such rules may be found.

In the light of such rules, others heretofore set forth, and the final and conclusive findings of the referee, we conclude that the motion for final judgment should be and hereby is sustained, and that respondent's conduct requires disciplinary action as recommended by the referee.

We are confronted then with the extent of discipline which is reasonable and justly required. In that connection, the report of the referee discloses that respondent had 23 character witnesses present at the hearing, but, without objection, at suggestion of the referee that the record not be unduly encumbered, only 4 of such witnesses were examined. Each of them testified in substance that he had voluntarily appeared; and that respondent had an excellent reputation for truth and veracity and was generally held in high regard in the community. It was assumed by the referee that the other 19 witnesses would have given similar testimony.

In such respect, a comparable situation was presented in State ex rel. Nebraska State Bar Assn. v. Richards, *supra.* In that opinion, citing authorities, we concluded that such testimony "should be given consideration in determining the extent of discipline that should be imposed." Therein also, after quoting from State ex rel. Nebraska State Bar Assn. v. Gudmundsen, 145 Neb. 324, 16 N. W. 2d 474, wherein we concluded that evidence of good reputation should not mitigate the consequences of the enormity of the misdeeds pleaded and proved, we said: "Whether or not the reputation of an attorney is of material importance in any discipline case must necessarily depend largely upon the facts and circumstances thereof." We apply that rule here.

In doing so, we conclude that under the facts and circumstances appearing herein, a judgment suspending respondent from the right to practice law in any court in this state or in any other manner for a period of 6

months, should be and hereby is rendered. Such suspension shall go into effect 30 days after the aforesaid judgment becomes effective. If, after the end of 6 months from the effective date of respondent's suspension he makes an affirmative showing sufficient to satisfy this court that he has fully complied with our order of suspension, and that he will not in the future engage in any practices offensive to the legal profession, then respondent will be reinstated and allowed to engage in the practice of law. However, if he fails within a reasonable time to make such showing or fails to strictly comply with this order of suspension, then his suspension shall become permanent and an order of disbarment will necessarily follow. All costs are taxed to respondent.

JUDGMENT OF SUSPENSION.