STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION,
RELATOR, V. L. WILLIAM KELLY III, RESPONDENT.

374 N.W.2d 833

Filed October 4, 1985. No. 84-482.

Alison L. Larson, Assistant Counsel for Discipline, for relator.

John R. Doyle and Timothy J. Doyle, for respondent.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is a disciplinary proceeding in which the respondent, L. William Kelly III, was charged with violating his oath of office as a lawyer and the Code of Professional Responsibility.

The respondent was admitted to the practice of law in this state on July 2, 1976.

On September 1, 1983, William Micek and Grover Robinson sought to retain the respondent's grandfather, Lloyd W. Kelly, Sr., to defend them on charges which were to be filed in Hall County, Nebraska. After briefly discussing the case with them, the senior Kelly called the respondent into his office to assist in the matter. A fee arrangement was discussed at this time, and a retainer of $1,000 to $1,500 was requested from each of the two

men. After further discussion it was arranged that the two men could leave their bond receipts with the Kellys in lieu of a cash retainer.

No express agreement was reached regarding the assignment of the cash bonds to the Kellys. Both Micek and Robinson claim that they expressly refused to assign the bond receipts and that the respondent was present at the time of this refusal. Respondent has no recollection of Micek's refusal to assign his bond receipt.

Micek and Robinson also claim that they offered to put up cash retainers but that Lloyd Kelly, Sr., responded that the cash retainers would be unnecessary so long as the bond receipts were left as security. The unassigned bond receipts were then left with the respondent on September 1, 1983.

According to Robinson, the respondent was told that the bond money was "all his" if he was able to get the charges dismissed. Lloyd Kelly, Sr., testified that such a statement was made at the end of the meeting in his office on September 1, 1983, when Micek and Robinson handed their bond receipts to the respondent. Robinson testified that he returned to the Kelly office later that same day and told the respondent that he could keep Robinson's $1,500 if the charges against him were dropped.

Following the September 1, 1983, meeting in the Kelly offices, the respondent engaged in several discussions with the Hall County attorney regarding Micek's and Robinson's cases. On September 14, 1983, the county attorney declined to prosecute Micek. On that same afternoon, the respondent wrote an assignment to Kelly & Kelly on the back of Micek's bond receipt and had another local attorney write Micek's signature below the assignment. The receipt was then presented to the clerk of the Hall County Court, and the $1,500 was paid over to the respondent. The respondent testified that he believed he had Micek's permission to cash the bond and that he thought he was doing Micek a service by saving him an extra trip from Lincoln to endorse the bond receipt. The proceeds of the bond received by the respondent were deposited in the Kelly office account, not a segregated trust account. The respondent testified that the funds were not segregated because he thought

he was entitled to the entire fee.

Later in the evening on September 14, 1983, Micek called the respondent at his home. Micek claims that the respondent told him, "I think I've got your charges dropped. But call me next week and I'll find out." The respondent claims that he stated, "They're not going to press charges against you. Why don't you come in, in a week or the first part of next week, or whatever, and we'll get, you know, we'll get the fee squared away." Micek was not informed in this conversation of the fact that his bond receipt had been endorsed in his name and cashed. The respondent stated that he did not tell Micek that the bond had been cashed because, at the time, he did not think it was important. Apparently, this was due to Robinson's statement regarding retention of the bond money if the charges were dismissed.

Micek and Robinson testified that they went to Grand Island the next day, September 15, 1983, because Robinson was confused about the sequence of procedural events taking place in his case. They also testified that they stopped at the Kelly offices, but the respondent was not there. It was on this date that Micek says he first learned from the clerk of the Hall County Court that the prosecution against him had definitely been declined and that his bond had been cashed. The respondent testified that his office records do not indicate that either Micek or Robinson was in the Kelly office on September 15, 1983, and that he had told Micek during the telephone conversation on the evening of September 14, 1983, that he (Kelly) would be out of town.

On September 19, 1983, Micek and Robinson made another trip to Grand Island to see the respondent. Micek said that he asked the respondent if his bill had been computed so that he might get everything squared away to save another trip to Grand Island. Respondent is said to have replied that he would send Micek the remaining money when the fees were figured but that he had to first discuss the bill with his grandfather, who "was sick, or something like that." The respondent, in contrast, testified:

> Q. And did Mr. Micek at that time request the return of his money?

A. No.

Q. He didn't?

A. No. If he would have reques — no, it was not discussed. What was discussed was, I said, "As soon as I get an opportunity to visit with my grandfather with regards to the fee notwithstanding what we said would be a retainer, I don't think we're entitled to the entire amount and we'll reimburse it after I get a chance to see him." I also explained to him that, you know my grandfather and his attitudes and everything, that it would probably take a couple weeks and that we would work something out; that I felt we would be entitled to a fee somewhere in the amount of $500. That seemed agreeable with him at the time.

The respondent admitted that, on this date, Micek was concerned with the fact that the respondent had cashed the bond receipt.

Micek stated that he returned to Lincoln and waited to receive his refund. Despite telephone calls to remind the respondent, Micek did not receive a check. Finally, Micek sought the assistance of a Lincoln attorney, Richard Scott. Scott telephoned the respondent and was informed that the $1,000 would be sent to Micek.

On October 10, 1983, not having received a check from the respondent, Micek returned to Grand Island. The respondent first told Micek that a check had already been sent. Shortly thereafter, the respondent wrote a check for $1,000 to Micek. Micek attempted to cash the check at the drawee bank but was told that there were insufficient funds in the account to cover the check. Upon his return to the Kelly office, Micek was told that the receipts from the previous day had not been deposited but that he could cash the check in a half hour or so. Funds were then deposited, and Micek was able to cash the check. Neither Richard Scott nor Micek ever received a check in the mail from the respondent.

On October 13, 1983, the respondent received notice of the filing of a complaint with the Counsel for Discipline of the Nebraska State Bar Association and was informed that he had 15 days to file a written response. His response was not received

until November 21, 1983. The respondent had previously received an unrelated private reprimand from the Committee on Inquiry for the Fifth Disciplinary District on June 13, 1983. One of the specific recommendations in that reprimand was that "in the future, should any response be due the Counsel for Discipline by the Respondent, that it be done promptly as the rules provide . . . ." In response to questioning by the Committee on Inquiry in regard to his late filing in the present matter, the respondent stated: "Quite frankly, I misread it and missed it [the 15-day filing period]; that's all. I did not try — Lord knows, after the last one I did not try and not follow any rules, believe me."

On February 21, 1984, written charges against respondent were filed with the Committee on Inquiry for the Fifth Disciplinary District. A hearing before the committee was held on March 15, 1984. The committee found reasonable grounds for discipline and the filing of formal charges. The Disciplinary Review Board also found grounds for discipline, and formal charges were filed in this court on June 18, 1984.

There was a hearing before the referee on March 4, 1985. The referee found that the respondent was guilty of the violations charged and that many of the respondent's problems were the result of alcoholism. The referee thought that a lengthy period of probation would be appropriate, in light of the respondent's recent efforts to bring his alcoholism under control. Because there was no way to effectively supervise probation, the referee recommended that the respondent be suspended from the practice of law for a period of 6 months. The relator then filed exceptions to the referee's recommendation.

The basic issues in this case are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances. Our determination of these issues is based on a de novo review of the record. *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984); *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 326 N.W.2d 173 (1982).

The relator's burden of proof is to "establish the allegations in the formal charges by a clear preponderance of the evidence, so the court is satisfied to a reasonable certainty that the

charges are true." *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. 545, 548, 316 N.W.2d 46, 48 (1982). The presumption of innocence applies.

The respondent is alleged to have violated his oath to faithfully discharge his duties as an attorney to the best of his abilities. Neb. Rev. Stat. § 7-104 (Reissue 1983). He is also charged with violating the following disciplinary rules of the Code of Professional Responsibility:

DR 1-102 Misconduct

    A. A lawyer shall not:

        1. Violate a Disciplinary Rule.

        . . . .

        3. Engage in illegal conduct involving moral turpitude.

        4. Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

        5. Engage in conduct that is prejudicial to the administration of justice.

        6. Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 9-102 Preserving Identity of Funds and Property of a Client

    A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

        1. Funds reasonably sufficient to pay bank charges may be deposited therein.

        2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

14

B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities, or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

The respondent admits that he secured a forged endorsement of Micek's bond receipt. While there is conflicting evidence as to the understanding that Micek and the respondent had about the receipt, it is clear that there was never an express written assignment by Micek. Even if the respondent was authorized to cash the bond, the method used was wholly improper. The respondent characterized the forgery as ministerial in nature and done as a service to his client. This court has previously held a similar act to constitute a moral delinquency justifying suspension or disbarment. *State ex rel. Nebraska State Bar Assn. v. Butterfield*, 169 Neb. 119, 98 N.W.2d 714 (1959).

In *Butterfield* the respondent was held to have violated the Canons of Professional Ethics by postdating an acknowledgment he had affixed to a deed in his function as a notary public. In *In re Conti*, 75 N.J. 114, 380 A.2d 691 (1977), an attorney prevailed upon his secretary to forge his clients' names to a deed. He then executed an acknowledgment on the same instrument, certifying that his clients had appeared personally before him to acknowledge and deliver the deed. The respondent had engaged in this conduct at the request of and as a service to his clients. Nevertheless, the court concluded that he had violated DR 1-102(A)(4), as the forgeries amounted to an endeavor to mislead, while the acknowledgment was an outright misrepresentation. The respondent's conduct in the

present case was equally misleading.

The respondent admitted that after cashing the bond receipt the proceeds were not placed in a trust account but were deposited in the Kelly & Kelly office account. Whatever the initial retainer agreement between the respondent and Micek, it is clear that a fee of $1,500 had not been set, despite what the respondent might have thought in view of the statements made by Robinson. Commingling of a client's funds has been characterized as an area of grave concern. *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984). The inherent danger in such a practice is the potential for the loss of client funds. Micek experienced an element of that danger when he could not immediately cash the $1,000 check written by the respondent.

The respondent failed to tell Micek that he had received the bond proceeds on September 14, 1983. The fact that the respondent failed to inform Micek of the bond transaction during their telephone conversation that evening lends support to the view that the respondent acted knowingly and without authority in cashing the bond receipt.

The fact that Micek did eventually receive a refund of $1,000 from the respondent is not controlling, given the context of this case. The refund was acquired only after Micek had waited nearly 4 weeks without a response, had retained another attorney to assist in the matter, and then drove to Grand Island to receive an insufficient funds check. "A restitution of funds wrongfully converted by a lawyer, after he is faced with legal accountability, is not an exoneration of his professional misconduct." *State ex rel. Nebraska State Bar Assn. v. Bremers*, 200 Neb. 481, 484, 264 N.W.2d 194, 197 (1978).

Implicit in the oath of an attorney and in the license to practice law are the requirements of proper demeanor and restraint from practices which serve to discredit the legal system. *Statmore, supra*. In this case it is evident that the respondent has committed the violations of his oath as an attorney and of the Code of Professional Responsibility as charged. His conduct was of the type which brings reproach upon the legal profession and, as such, constitutes grounds for discipline. *Bremers, supra*.

The standard applied in determining the nature and extent of the discipline to be imposed involves consideration of "the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law." *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 819, 326 N.W.2d 173, 176 (1982).

The evidence in this case shows that the respondent has taken positive steps to deal with his alcohol dependence. The unsolicited testimony and letters from fellow attorneys evidence the respondent's capacity to be a competent and capable attorney.

Evidence of good reputation does not mitigate the misconduct proved in this case. *State ex rel. Nebraska State Bar Assn. v. Butterfield*, 169 Neb. 119, 98 N.W.2d 714 (1959). The respondent engaged in deceit, misrepresentation, and the commingling of client funds. The balance in the account in which the funds were placed was allowed to drop below the amount of the client funds which had been deposited in it. These acts were destructive of the trust essential to the attorney-client relationship.

We believe disbarment is inappropriate in the absence of specifically delineated injuries to Micek as the result of the respondent's misconduct. *McArthur, supra*. On the other hand, we believe a period of probation, as urged by the respondent, would serve to protect neither the public nor the reputation of the bar in light of the respondent's previous misconduct and the nature of the present violations.

We conclude that the respondent should be suspended from the practice of law for a period of 1 year. The suspension shall commence 10 days after the date of the filing of this opinion.

JUDGMENT OF SUSPENSION.